IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, *ex rel.*  )
TAYLOR SMITH, JEANNINE PREWITT,  )
and JAMES AILES,  )
                 )
                   Plaintiffs-Relators,  )
                 )
v.  )      Civ. Action No. 05-1073-WEB
                 )
THE BOEING COMPANY  )
and DUCOMMUN, INC.,  )
f/k/a AHF-Ducommun,  )
                 )
                   Defendants.  )
                                                  )

## **Memorandum and Order**

The above-named Relators filed this *qui tam* action on behalf of the United States. *See* 31 U.S.C.

§ 3730(b). The United States has elected not to intervene in the action. Doc. 4. The Amended Complaint

alleges that the Boeing Company and one of Boeing's subcontractors, Ducommun, Inc., violated the False

Claims Act (FCA) by submitting false or fraudulent claims for payment to the U.S. Government. In sum,

Relators claim that shortcomings in the manufacturing and quality control processes at Ducommun resulted

in delivery to Boeing of "bogus" or "unapproved" aircraft parts, and that after the Relators and others

brought these facts to Boeing's attention, Boeing concealed the information and submitted false claims for

payment relating to aircraft and parts delivered by Boeing to the U.S. Government. The Relators further

allege that Boeing retaliated against them after they reported the information to Boeing management. The

defendants deny the allegations.

The matter is now before the court on the defendants' motions to dismiss the Amended Complaint. The defendants argue that Relators' FCA allegations fail to satisfy Fed.R.Civ.P. 9(b), which mandates that allegations of fraud be made with particularity. Boeing also argue the retaliation claim should be dismissed for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). Relators, for their part, contend the Amended Complaint is sufficient to put defendants on notice of the alleged fraud and to permit them to prepare a defense. They argue the standards of Rule 9(b) should be relaxed because they have limited access to Boeing's internal documents. With respect to their claim of unlawful retaliation, Relators contend the allegations are sufficient to withstand a motion to dismiss under Rule 12(b)(6).

      I. *Motion to Dismiss FCA Claims Based on Rule 9(b)*.

      A. *Summary*.   Boeing first contends the Amended Complaint fails to identify any fraudulent claim submitted to the Government. Doc. 23 at 6. The submission of a false claim is the *sine qua non* of an FCA violation, Boeing says, but the complaint fails to provide any factual detail about the submission of any claims, alleging only that "Boeing submitted false claims and/or false documents to the United States government in connection with each of the aircraft and spare parts [made by Ducommun]." *Id*. at 7 (Citing Amended Complaint, ¶¶ 8 & 14). Next, Boeing says the Amended Complaint fails to specify what is false or fraudulent about the claims. According to Boeing, the complaint alleges only that Boeing "has concealed" from the Government that "Boeing aircraft with Ducommun unapproved parts are not airworthy, not safe, and must be grounded," and that Boeing made "knowing sale to the United States government of bogus spare parts." Doc. 23 at 7 (citing Amended Complaint, ¶¶ 4 & 5). Boeing contends these allegations are insufficiently specific and are not linked in the complaint to any particular false claims. Moreover, Boeing contends, the Amended Complaint fails to allege with specificity when such claims were

made, the persons who made them, or the consequences to the Government from submission of the claims. *Id*. at 9.

Defendant Ducommun also contends the Amended Complaint is deficient because it does not allege that Ducommun knowingly defrauded the Government.  Pointing out that Ducommun was supplying parts to Boeing's commercial airplanes division, Ducommun says "[a]bsent an allegation that any particular person at Ducommun knew that parts on a particular contract with Boeing were ultimately going to be sold to the government, the relators cannot state a cause of action against Ducommun." Doc. 24 at 7.  It believes the Relators "must allege that Ducommun knowingly set out on a course to deceive the United States Government by violating a particular duty owed to the government...."  *Id*. at 12.  Ducommun also complains that the Relators have failed to identify any specific defective parts sold to the government, any claims of Ducommun to Boeing for payment, any particular contracts or subcontracts that are at issue, or the impact on the Government from  Ducommun's alleged conduct.

In response, Relators first assert that these same arguments were rejected in *United States ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107 (S.D. Ohio 1998), a similar case where the district court found the allegations were sufficient to put Boeing on notice of the claims and to allow it to prepare a defense. The *Roby* court also said the relators could not be expected to know the identities of the individuals at Boeing who engaged in the alleged fraud at different stages of the process, because such an evidentiary matter might be exclusively within the knowledge of Boeing.  Relators next summarize some of the allegations in the Amended Complaint.  They allege that under FAA regulations, Boeing must submit a quality assurance program to the FAA for approval in order to obtain a production certificate, and must see that its parts suppliers perform appropriate inspections, maintain quality control data, and certify that

its parts conform to Boeing's quality standards.  Doc. 6 at ¶¶ 20-24.  They allege that Ducommun failed to comply with these requirements, such that various "flight safety critical parts" manufactured by Ducommun were defective and "non-conforming" and were incorporated by Boeing into aircraft sold to the Government.  Relators contend that because of these deficiencies, all of the aircraft sold by Boeing which incorporated Ducommun parts did not conform to contract requirements, U.S. military requirements, or FAA specifications.  Relators identify the following Ducommun parts as being "defective and bogus"[1]: bear straps, chords, fail-safe chords, compression chords, inner cords and outer cords, frames, support angle assemblies, stringers, doublers, triplers, and skins.  ¶ 28.  Relators allege that Boeing incorporated these parts into 32 aircraft identified in paragraph 30 of the Amended Complaint.  Relators claim that a "Bear Strap Team" assembled by Boeing to investigate Ducommun's problems uncovered deficiencies that resulted in a decision to suspend delivery of Ducommun parts to Boeing pursuant to a report by Boeing Quality Field Representative Salvatore Cerchio.  ¶ 44-46.  A "Tooling Audit Team" also allegedly uncovered additional non-compliance and discovered that Ducommun kept two sets of books as part of an attempt to mislead the team and obtain approval of Ducommun's parts under FAA requirements.  ¶ 54.

Relators further allege that the Tooling Audit Team reported its findings to Boeing Management in May 2000, but Boeing responded by toning down the team's findings and striking any mention of FAA violations and instituting an internal gag order.  ¶ 84, 89.  They claim they suffered retaliation for their efforts to disclose and correct the fraudulent activity and safety violations.  ¶ 92-94.  They allege that Boeing's Manager of Security Investigations told Relators Prewitt and Smith in February of 2001 that they were

[1] According to the Amended Complaint, "bogus" parts (or "unapproved" parts) are parts which cannot be shown to have been manufactured to meet "engineering specifications."  Doc. 6 at ¶ 1.

prohibited by Boeing from informing the FAA of their findings concerning Ducommun and that Boeing would take legal action against them if they did so.  ¶ 99.

Relators allege that Boeing sold to the United States government "the types and numbers of aircraft with Ducommun parts" listed in ¶ 30 of the Amended Complaint.  Moreover, by reason of the deficiencies alleged, these aircraft together with all other aircraft sold by Boeing which incorporate Ducommun parts during the relevant time period (such as Boeing's military aircraft), did not conform to contract requirements, U.S. Military specifications, and FAA requirements.  ¶ 32.  Relators claim that "all aircraft and spare parts delivered by Boeing to the United States government containing parts manufactured by Ducommun in or after 1994 are unapproved and unsafe," that "Boeing submitted false claims and/or false documents to the United States government in connection with each of the aircraft and spare parts described in the preceding paragraph," that "Boeing knew or was recklessly indifferent to the facts of such nonconformance at or before the time it submitted the false claims," that Boeing violated the False Claims Act "with respect to each such aircraft and each such document," and that the United States government "was damaged as a result."  ¶¶ 113-17.

B.  *Discussion*.  Rule 9(b) provides in part: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity.  Malice, intent, knowledge, and other condition of mind of a person may be averred generally."  The heightened pleading standard of Rule 9(b) applies to actions under the False Claims Act.  *See Walburn v. Lockheed Martin Corp.*, 431 F.3d 966, 2005 Fed.App. 0479P (6th Cir., Dec. 20, 2005); *U.S. ex rel. Schwartz v. Coastal Healthcare Group, Inc.*, 232 F.3d 902 (Table), 2000 WL 1595976 (10th Cir., Oct. 26, 2000) (citing cases).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how of the alleged fraud.'"

5

*Schwartz*, 2000 WL 1595976 at ** 3.  The circumstances required to be pled with particularity are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.  *Id.* (*citing Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999)).

Relators correctly point out that Rule 9(b) does not require a description of all of the evidence supporting a fraud claim.  The rule is designed merely to afford a defendant fair notice of the plaintiff's claims and the factual ground upon which they are based.  *Koch v. Koch Industries, Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000).  But after reviewing the Amended Complaint, the court must agree with the defendants that Relators have failed to satisfy Rule 9(b).  As indicated above, a complaint alleging fraud must set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequence thereof.  *Koch*, 203 F.3d at 1236.  Relators' Amended Complaint comes up short in virtually all of these departments.  Although the complaint is already extensive and contains significant details about Ducommun's alleged manufacturing deficiencies and Boeing's alleged response to Relators' investigation, it addresses only in conclusory terms the submission of false or fraudulent claims to the U.S. Government.  Relators allege vaguely that all of the aircraft containing Ducommun parts that were sold by Boeing "during the relevant time period" did not conform to "contract requirements," "U.S. Military specifications, where applicable," and "Federal Aviation Administration (FAA) requirements."  The Amended Complaint specifically identifies 32 such aircraft.  It then alleges that "Boeing submitted false claims and/or false documents to the United States government in connection with

each of the aircraft and spare parts described in the preceding paragraph."[2]

Such blanket allegations fail to give the defendants proper notice of the alleged fraud. Liability under § 3729(a) attaches when a person knowingly presents (or causes to be presented) to the U.S. Government a "false or fraudulent claim for payment or approval" or when they knowingly use a "false record or statement to get a false or fraudulent claim paid or approved" by the Government. *See* 31 U.S.C. § 3729(a)(1) & (a)(2). *See also United States v. Mackby*, 261 F.3d 821, 826 (9th Cir. 2001) (setting forth elements of an FCA claim). A "claim" in this context includes "any request or demand, whether under a contract or otherwise, for money or property...." § 3729(c). "Thus, whether a claim [for money or property] is valid depends on the contract, regulation, or statute that supposedly warrants it." *United States v. Southland Management Corp.*, 326 F.3d 669, 674 (5th Cir. 2003) (*en banc*). In this instance, one cannot discern from the Amended Complaint how claims for payment presented by the defendants were false or fraudulent. The Amended Complaint does not identify any contractual provisions, regulations or statutes under which the defendants presented false or fraudulent claims for payment or approval.[3] As Boeing correctly points out: "Nowhere [does the Amended Complaint] identify what contractual requirements were imposed on Boeing by the [Government] in the sale of particular aircraft,

---

[2] The "preceding paragraph" refers to "all aircraft and spare parts delivered by Boeing to the United States government containing parts manufactured by Ducommun in or after 1994...." Doc. 6, ¶ 113.

[3] The Amended Complaint refers, among other things, to 14 CFR § 21.143(a) and an FAA Advisory (Circular No. 21-20B), and alleges that Boeing and/or Ducommun failed to meet the requirements of these sections. Doc. 6 at ¶¶ 20-21. These provisions appear to contain requirements for holders of production certificates issued by the FAA. The Amended Complaint does not make clear how defendants' alleged failure to comply with these regulations relates to the allegations of false or fraudulent claims. The Amended Complaint does not allege that in submitting claims for payment, the defendants falsely certified to the Government that it had complied with these requirements or that it falsely certified the aircraft were airworthy.

what certifications or representations were supposedly made falsely to the government, and what false claims were allegedly submitted." Doc. 61 at 3.  *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 564 (6th Cir. 2003) ("The failure to identify specific parties, contracts, or fraudulent acts requires dismissal."); *U.S. ex rel. Williams v. Martin-Baker Aircraft Co., Ltd.*,  389 F.3d 1251, 1257 (D.C. Cir. 2005) (complaint did not meet Rule 9(b) where it failed to clarify what the contractor misrepresented to the Government).   *Cf. United States v. Aerodex, Inc.*, 469 F.3d 1003, 1005-07 (5th Cir. 1973) (claims seeking payment for engine bearings were false where contractor intentionally mislabeled parts that it knew did not meet the contract specifications);  *Shaw v. AAA Engineering & Drafting, Inc.*, 213 F.3d 519 (10th Cir. 2000) (invoices for payment could be the basis for an FCA claim because they falsely implied a certification by the contractor that it complied with the contract's requirements).   The Amended Complaint does not disclose the contents or substance of any false representations or certifications made by the defendants in connection with any claims for payment.   This failure to pinpoint the alleged fraud or falsity goes to the heart of Rule 9(b)'s concern that the complaint give proper notice.   Nor are any details provided about the time and place false claims were made, or about who made them.   Lastly, the Amended Complaint does not specify the effect upon the Government or what the defendants obtained as a result of the alleged fraud.   In sum, this complaint fails to satisfy Rule 9(b) with respect to the FCA claims against both of the defendants.  *Cf. United States ex rel. Clausen v. Laboratory Corp.*, 290 F.3d 1301, 1311 (11th Cir. 2002) ("[I]f Rule 9(b) is to be adhered to, some indicia of reliability must be given in the complaint to support the allegation of *an actual false claim* for payment being made to the Government.").   The Relators need not plead detailed evidentiary matter, but a general indictment of the defendants' quality control methods is not sufficient.   The complaint must include some detail about the time, place and contents

8

of false claims to the Government, as well as the identity of the party making the representations and the consequences thereof. *Koch*, 203 F.3d at 1236; *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 233 (1ˢᵗ Cir. 2004) ("some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b).").

The court is not persuaded by Relators' argument that the complaint -- though lacking in detail -- is sufficient because the relevant documents are in Boeing's possession or within its knowledge. Tenth Circuit case law makes clear that the particularity requirement of Rule 9(b) is not dispensed with in such circumstances. Rather, "[a]llegations of fraud *may be based on information and belief* when the facts in question are peculiarly within the opposing party's knowledge *and the complaint sets forth the factual basis for the plaintiff's belief*." *Koch*, 203 F.3d at 1237 (*quoting Scheidt v. Klein*, 956 F.2d 963 (10ᵗʰ Cir. 1992)) [emphasis added].[4]  See also Karvelas, 360 F.3d at 226 ("information and belief" allegations remain subject to the particularity requirements of Rule 9(b)).  Because the Amended Complaint does not satisfy these prerequisites, the defendants' motion to dismiss the FCA fraud claims for failure to satisfy Rule 9(b) must be granted.

C. *Leave to Amend.*

Relators have indicated their desire to amend the complaint if the court finds they have not satisfied Rule 9(b).  They move to substitute a "Revised Second Amended Complaint" as an exhibit to their response brief, and ask for leave to file it if the court rules the Amended Complaint is inadequate.  Doc.

---

[4] This relaxed standard, however, should not mistaken for license to base claims of fraud on speculation and conclusory allegations.  *See United States ex rel. Russell v. Epic Healthcare Management Corp.*, 193 F.3d 304, 308 (5ᵗʰ Cir. 1999).  Nor is it a "ticket to the discovery process that the statute itself does not contemplate." *Id*. at 309.

55 at 29; Doc. 63 at 2. Alternatively, they ask that defendants' motion to dismiss be stayed and they be granted leave to conduct discovery relating to the contracts for sale of the subject aircraft and aircraft parts. The defendants oppose these requests, arguing the Relators have had sufficient opportunity to plead their claims and that their request for discovery is an admission they cannot satisfy Rule 9. They further contend the Relators are not entitled to conduct discovery to cure the deficiencies in their complaint.

As defendants point out, the manner in which the Revised Second Amended Complaint has been presented poses a bit of a moving target. Nevertheless, the court's primary concern at this point is how to move the litigation forward to a just resolution under the governing law. With that in mind, the court will grant Relators' motion to substitute the Revised Second Amended Complaint as an exhibit to their response brief. The exhibit is relevant to the issue of whether further amendments to the complaint would be futile, and although Relators could have included the exhibit earlier, the court does not believe their failure to do so amounts to a waiver of the right to present the issue. As for Relators' suggestion that defendants' motions to dismiss should be stayed so as to permit them to conduct discovery, the court denies that request as an unwarranted departure from the ordinary rules of pleading. *See Karvelas,* 360 F.3d at 231 (the courts generally will not permit *qui tam* relators to use discovery to meet the requirements of Rule 9(b)).

The court finds Relators' request for leave to file a Second Amended Complaint should be granted. Rule 15(a) provides in part that "leave [to amend] shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "Refusing leave to amend is generally only justified upon a showing of undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment, etc." *Castleglen, Inc. v. Resolution Trust*

10

*Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (*citing* Foman v. Davis, 371 U.S. 178, 182 (1962)). The record currently before the court does not warrant denial of leave to amend. The court notes defendants' suggestion that the Relators have been dilatory -- for example, defendants point out the claims were first filed nearly four years ago and Relators have now filed three versions of the complaint. While it is true that Relators first brought their FCA claims in 2002, the claims were originally brought in that separate action were later dismissed for reasons not shown by the record. The instant action was filed in March of 2005. The complaint in the instant action has been amended once before, and Relators now seek a second chance to amend in response to defendants' motion to dismiss. Although it is certainly time for these claims to be resolved, the court cannot say the record shows such dilatory conduct, undue delay or bad faith as to justify a refusal of Relators' current request to amend the complaint. As for whether or not Relators' potential amendments would be sufficient to cure the deficiencies in their FCA claims, under the circumstances the court believes the best course is to grant Relators an opportunity to file a Second Amended Complaint. The court will then address the sufficiency of that complaint if, as, and when it is filed and the defendants challenge it in a motion to dismiss. This will ensure that all parties have adequate notice and opportunity to fully present their positions to the court. The court has also considered defendants' request that Relators be ordered to pay defendants' attorneys fees in connection with the amendment of the complaint, but the court is not persuaded that a basis for such an award has been demonstrated.

II. *Motion to Dismiss FCA Retaliation Claims*.

A. *Summary*. The Amended Complaint also alleges that Boeing unlawfully retaliated against them in violation 31 U.S.C. § 3730(h) of the FCA. Boeing argues the Amended Complaint fails to state a viable FCA retaliation claim for three reasons. First, Boeing argues the Relators fail to allege they were engaging

in activity protected by the FCA.  It says the allegations show the Realtors were merely investigating noncompliance with quality or regulatory standards as a part of their job responsibilities, which according to Boeing is not protected activity under the FCA.  Second, Boeing contends the Relators have not alleged that Boeing was aware that they were acting in furtherance of an FCA action.  Third, Boeing argues the Relators have failed to allege a causal connection between the protected activity and the alleged discrimination -- i.e., that Boeing discharged or otherwise punished them *because of* their protected activity under the FCA.

In response, Relators point out that Rule 12(b)(6) rather than Rule 9(b) governs this claim, meaning the claim cannot be dismissed unless it is beyond doubt the Relators can prove no set of facts in support of it.  They contend the complaint alleges that they engaged in conduct protected by the FCA, including the investigation of "matters which are calculated, or reasonably could lead, to a viable FCA action." *Citing Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861 (4th Cir. 1999).  They note the Amended Complaint alleges that Boeing discriminated against them in employment "motivated by the lawful acts described above [in the Amended Complaint] taken by Relators in furtherance of this action...." Doc. 6 at ¶ 123.  The complaint also alleges that Boeing knew they were investigating "allegations of a sort which are routinely advanced in *qui tam* actions under the False Claims Act, and which could reasonably be expected, if left unresolved, to lead to such an action."  Doc. 6 at ¶ 124.

B.  *Discussion*.  On a motion to dismiss pursuant to Rule 12(b)(6), the purpose of the motion is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir.1994). The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer any evidence to support the claims. *Scheuer v.*

*Rhodes*, 416 U.S. 232, 236 (1974).  Under the limited review applicable at the pleading stage, a complaint may not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In making this determination, all well-pleaded facts in the complaint -- as distinguished from conclusory allegations -- must be taken as true. *See Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).

The FCA's anti-retaliation (or "whistle blower") provision grants a remedy to anyone who has been discriminated against by his employer on account of the employee's lawful acts "in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." *See* 31 U.S.C. § 3730(h).  Thus, an employee must prove three elements to support an FCA retaliation claim:  (1) that the employee engaged in activity protected under the statute; (2) that the employer knew that the employee engaged in protected activity; and (3) that the employer discriminated against the employee because she engaged in protected activity. *Moore v. California Institute of Technology Jet Propulsion Laboratory*, 275 F.3d 838, 845 (9th Cir. 2002).

In *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514 (10th Cir. 1996), the Tenth Circuit addressed the scope of activity protected by this section.  The court emphasized that "an individual need not actually file a qui tam action in order to maintain a claim under section 3730(h)," but "under the plain language of the statute, the activity prompting plaintiff's discharge must have been taken 'in furtherance of' an FCA enforcement action." *Id*. at 1522 (*citing Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 950 (5th Cir. 1994)).  Most courts recognize that conduct can be "in furtherance" of an FCA action if it involves investigation of matters that reasonably could lead to a viable

13

False Claims Act case. *See U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731, 740 (D.C. Cir. 1998). In *Ramseyer*, the court found that intra-corporate complaints can fall within the scope of § 3730(h), but noted that when an individual's assigned job duties entail the investigation of the matters in question, "such persons must make clear their intentions of bringing or assisting in an FCA action in order to overcome the presumption that they are merely acting in accordance with their employment obligations." *Ramseyer*, 90 F.3d at 1523, n.7.

Relators contend they put Boeing on notice that they were furthering or intending to further an FCA action by reporting they found fraud and misconduct by Ducommun and resulting FAA violations. Doc. 55 at 24. They also allege that "when relators Prewitt and Smith told Boeing that they were planning to report the Tooling Audit team findings directly to the Federal Aviation Administration, Boeing Manager of Security Investigations told them that they were prohibited by Boeing from reporting their findings to the FAA and that Boeing could take legal action against them if they did so." *Id.* (*citing* Amended Complaint, ¶ 99).[5] The Amended Complaint shows -- and Relators do not dispute -- that their investigation and report concerning Ducommun was part of their assigned job duties. Under such circumstances, the fact that they reported to Boeing that Ducommun engaged in supplier fraud and that its deficiencies resulted in FAA violations is not sufficient to constitute "protected activity" under the FCA. Under *Ramseyer*, Relators had

---

[5] Paragraph 99 does not actually allege that the Relators informed Boeing that they planned to report their findings to the FAA. Rather, it alleges that a Boeing manager told the Relators they were prohibited from informing the FAA of their findings and that they would face legal action if they revealed any of that information to the FAA.

Nevertheless, given the liberal pleading standards of Rule 12(b)(6), the court will consider Relators' assertion that they informed Boeing of their plan to inform the FAA of their findings as a reasonable inference arising from the allegations in the Amended Complaint.

to "make clear their intentions of bringing or assisting in an FCA action" to overcome the presumption that they were merely acting in accordance with their employment obligations.  Relators do not allege that they told Boeing (prior to the instances of alleged discrimination) they were contemplating an FCA action.  Nor do they allege that they expressly accused Boeing of cheating or defrauding the Government on sales of planes containing Ducommun parts.  The only matters identified in the Amended Complaint that arguably go beyond Relators' assigned responsibilities are the allegations that Relators "pushed Boeing management for corrective actions concerning the uncovered quality control issues" and told Boeing that they planned to inform the FAA of their findings.

The scope of FCA protected activity is not well-defined in cases of this kind.  In *Ramseyer*, *supra*, the relator was an employee responsible for monitoring her employer's regulatory compliance on claims paid in part by Medicaid.  She was terminated after she repeatedly cited instances of non-compliance to her superiors.  The Tenth Circuit concluded the relator had no FCA retaliation claim under these circumstances because she had not put her employer on notice she was taking any action in furtherance of an FCA claim.  *Ramseyer*, 90 F.3d at 1523.  The court observed that although she had complained to her supervisors about the company's failure to comply with Medicaid requirements, the relator never suggested to the company that she intended to use such non-compliance in an FCA action and "gave no suggestion that she was going to report such noncompliance to government officials."  *Id*.  The Relators in the instant case argue their situation is distinguishable from *Ramseyer*, because they informed Boeing of their intent to report the noncompliance to the Government -- i.e., they told Boeing they were going to inform the FAA.  *See also Brandon v. Anesthesia & Pain Mgmt. Assoc*., 277 F.3d 936, 945 (7th Cir. 2002) (no FCA retaliation where employee did not put employer on notice that he was planning to bring a *qui tam*

action or report their conduct to the government). The court quite frankly has some doubt whether this threatened disclosure qualifies as protected conduct under the FCA. Although it is true that Relators threatened to disclose their findings "to the Government" -- a fact which *Ramseyer* and other cases suggest is enough to invoke FCA protection -- the agency to which the Relators referred is a regulatory agency responsible for civilian aircraft safety standards, and their findings apparently involved what Relators considered to be regulatory violations relating to Boeing's manufacturing processes and resulting safety issues. Although disclosure of such matters might well be salutary, it is not clear that it involves "matters that reasonably could lead to a viable False Claims Act case" -- i.e., the cheating or defrauding of the government through the submission of false or fraudulent claims. This threatened disclosure seems to bear a rather indirect relationship to Boeing's claims for payment on sales of aircraft to the U.S. Government. *Cf. Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948, 951 (5th Cir. 1994) (affirming judgment as a matter of law for employer where the employee merely questioned propriety of charges to the Government; distinguishing cases where the employee told the employer she was concerned about the company defrauding the Government); *U.S. ex rel. Yesudian v. Howard University*, 153 F.3d 731, 740 (an employee's investigation of nothing more than his employer's non-compliance with federal or state regulations is not sufficient; "[t]o be covered by the False Claims Act, the plaintiff's investigation must concern 'false or fraudulent' claims."). As noted above, *Ramseyer* requires such a relator to make clear their intention of bringing or assisting in an FCA action to overcome the presumption that they were merely acting in accordance with their employment obligations. Whether Relators' threatened disclosure and other actions can satisfy that standard is debatable; it might depend upon the circumstances and context in which the conduct took place. Under a liberal interpretation of the allegations in the complaint, it is not

inconceivable that Relators could produce evidence to show that their interaction with Boeing dealt with matters closely connected to Boeing's contracts to sell aircraft to the Government, such that their "push for corrective actions" and threatened disclosure to the FAA could have been reasonably understood as an accusation that Boeing was making false claims in connection with its sales to the Government.

The court is mindful of the limited standard of review applicable at this stage of the proceedings. The issue is not whether the Relators will ultimately prevail, but whether they are is entitled to offer any evidence to support the claims. *Scheuer*, supra.  Thus, the possibility that Relators' retaliation evidence might ultimately be found lacking is not a basis for dismissing the claim on the pleadings.  Relators have alleged they were investigating matters of a sort that could reasonably lead to an FCA action and that Boeing was aware of that fact.  Boeing has not shown beyond doubt that the Relators can prove no set of facts in support of these allegations.  Moreover, with respect to Boeing's contention that Relators have failed to allege a causal connection between any protected activity and Boeing's alleged discrimination, the Amended Complaint alleges that Boeing engaged in discrimination "motivated by the unlawful acts described ... taken by Relators in furtherance of this [FCA] action...."  Doc. 6, ¶ 123.  This is a sufficient allegation of causation to withstand a motion to dismiss on the pleadings.  *Denton v. McKee*, 332 F.Supp.2d 659, 665 (S.D.N.Y. 2004) ("Defendants dispute the existence of causal connection; however, the Plaintiffs have pled the existence of such a connection and the Defendants have not defeated that assertion as a matter of law.").  Accordingly, Boeing's motion to dismiss the FCA retaliation claims under Rule 12(b)(6) must be denied.

III. *Motion to Dismiss Kansas Public Policy Claim*.

The Amended Complaint also alleges that Boeing's delivery of "nonconforming aircraft" violates

the public policy of Kansas and poses a hazard to public health and safety.  Doc. 6 at ¶ 128.  It alleges that

Relators engaged in protected activity by complaining to Boeing about such actions and that Boeing

retaliated against them for exercising their rights, all in violation of the public policy of Kansas.  *Id*. at ¶ 128-

30.  In a footnote, Boeing argued this claim should be dismissed because it is merely derivative of Relators'

FCA claim, and because a claim that Boeing submitted false claims to the U.S. Government does not

violate the public policy of the State of Kansas.  Doc. 23 at p. 14, n. 4 (*Citing Adler v. Continental Ins.*

*Co.*, No. 95-2282, 1996 WL 677085 (D. Kan., Nov. 1, 1996)).  In response, Relators say they are not

claiming Boeing violated Kansas public policy by submitting false claims, but rather by retaliating against

them for "exercising their rights" and complaining about the defendants' actions.  *Citing Hysten v.*

*Burlington Northern Santa Fe Railroad Co.*, 98 Fed.Appx. 764, 768 (10th Cir. 2004).

Inasmuch as Boeing's motion to dismiss has not addressed Relators' allegation that they were

retaliated against for complaining about violations of regulatory laws affecting public health and safety,

*see* Doc. 61 at 19-20, the court will deny Boeing's motion to dismiss this claim, because Boeing has not

demonstrated its entitlement to judgment as a matter of law as to this allegation.  *Cf. Palmer v. Brown*,

242 Kan. 893, 752 P.2d 685 (Kan. 1988) ("Public policy requires that citizens in a democracy be

protected from reprisals for performing their civil duty of reporting infractions of rules, regulations, or the

law pertaining to public health, safety, and the general welfare.").

IV.  *Conclusion*.

Defendants Boeing and Ducommun's Motions to Dismiss (Docs. 22 and 24) are GRANTED IN

PART and DENIED IN PART.  The motions to dismiss are granted with respect to the FCA claims in

Counts I and II of the Amended Complaint.  Counts I and II are hereby DISMISSED without prejudice

for failure to allege fraud with particularity as required by Fed.R.Civ.P. 9(b); however, the Relators are granted leave of court to amend the complaint to reassert such claims. Any such amended complaint shall be filed within 15 days of the date of this order. Defendants' motions to dismiss are DENIED with respect to the remaining counts of the Amended Complaint.

Relators' Motion for Leave to File a Substitute Exhibit B (Doc. 63) is GRANTED.

IT IS SO ORDERED this __27th__ Day of February, 2006, at Wichita, Ks.

s/Wesley E. Brown
Wesley E. Brown
U.S. Senior District Judge

19