IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* ) <br> TAYLOR SMITH, JEANNINE PREWITT, ) <br> and JAMES AILES, ) <br> ) <br> Plaintiffs/Relators, ) <br> ) <br> v. ) <br> ) <br> THE BOEING COMPANY ) <br> and DUCOMMUN, INC., ) <br> f/k/a AHF-Ducommun, ) <br> ) <br> Defendants. ) <br> ) | Civ. Action No. 05-1073-WEB |

## **Memorandum and Order**

This matter is before the court on Boeing's Motion for Partial Summary Judgment (and defendant Ducommun's identical motion). The motion alleges that Boeing made no claim for payment to the U.S. government on twenty-five of the forty-six aircraft identified by Relators in the Second Amended Complaint. Boeing argues it is entitled to summary judgment insofar as Relators' FCA claims are based upon these twenty-five aircraft. The motion is supported by sworn declarations from various Boeing officials identifying the purchasers of these aircraft and stating that the sales or leases did not involve claims for payment to the U.S. Government under the Foreign Military Sales (FMS) program.

Relators responded by filing a motion pursuant to Rule 56(f) asking that they be allowed to conduct additional discovery before answering. The initial affidavit filed by Relators' counsel stated that Relators "believe, contrary to Boeing's motion, that there were probably more aircraft sold to the U.S. Government or through the FMS than just the 46 identified." It explained that changes to Boeing's master scheduling order and a lack of transparency in the order may have

"skewed" the pairing of fuselages and purchasers, and that Boeing was in sole possession of documents that "will identify whether Relators tracked the defective fuselages correctly or if there exists, as Relators believe in some cases, a substituted aircraft (with a defective, nonconforming, and unapproved fuselage) for the aircraft that Boeing challenges by their Motion." The affidavit further stated that Relators have issued a second set of discovery requests to aid in responding to Boeing's motion. Additionally, Relators say depositions of Boeing representatives, including some of the declarants mentioned above, will be conducted in May-June of 2008.

As Boeing correctly pointed out in response, Relators' initial Rule 56(f) affidavit was inadequate. Boeing's declarations indicated that Relators had for the most part correctly identified the foreign governments or countries involved in the purchase of these planes, thus undermining Relators' explanation that changes to the master schedule must have thrown off their understanding of which fuselages were paired with which purchasers. Moreover, the affidavit failed to identify any factual basis for Relators' allegation and belief that these transactions involved sales or leases under the FMS program, with the exception of a rather conclusory assertion that Relators "had identified 46 aircraft that were built for branches of the U.S. military or some other country's military." Relators' affidavit was largely non-responsive to Boeing's assertion that these sales were direct sales that did not involve claims to the U.S. Government under the FMS program. Boeing stated in its response it was "prepared to provide a formal discovery response identifying any additional commercial derivative aircraft sales to the U.S. Government or through the FMS program during the 1994-2004 timeframe identified by relators. Boeing counsel's investigation to date indicates there are no other such aircraft." Doc. 136 at 1.

On April 7, 2008, Relators filed a Reply Brief with a supplemental affidavit. Unlike the

initial affidavit, this one contained at least some factual basis for Relators' belief that sales of some of the aircraft at issue involved claims to the U.S. Government. In reference to four specific aircraft (Nos. 28016, 28017, 27391, and 27385) that Boeing said were sold directly to the Itochu corporation, a Japanese company acting on behalf of the Japanese Government,[1] Relators provided copies of FAA registries which, according to Relators, showed that the first registered owner of the planes was the U.S. Air Force and that the registration was governmental in nature rather than commercial. Relators contend these documents show the planes were first registered to the U.S. Air Force and were then de-registered to permit registration overseas. Relators also argued the designation of the aircraft with a unique model number (767-27C) cast doubt on Boeing's claim that the planes were initially sold as "green" commercial aircraft. Relators say they need to depose Boeing declarant Anthony Williams to address "these seeming inconsistencies" and his assertion that the planes were sold in a direct commercial sale. Relators pointed out that Williams' declaration did not identify any specific contract numbers for these sales. Relators also complain that none of Boeing's declarants have any experience in Boeing's Military Aircraft Division, which would be responsible for sales under the FMS program. Additionally, Relators argue that although Boeing moves for summary judgment as to twenty-five aircraft, it "identif[ies] only twenty (20) different serial numbers listed in the SAC" and Boeing "provides nothing to support

---

[1] Boeing's Anthony Williams stated in his declaration that these planes were first sold directly by Boeing to the Itochu corporation, which was acting on behalf of the Japanese government. Because it was a direct commercial sale, Williams stated, Boeing did not request payment from the U.S. Government and the sale was not through the FMS program. He went on to state that after the sale, Boeing sold AWACS equipment for the aircraft to the U.S. Air Force under the FMS program, and the Air Force in turn then sold the AWACS equipment to the Japanese government. Insofar as the aircraft themselves were concerned, however, Williams said Boeing did not sell the aircraft to the U.S. Government and the Foreign Military Sales program was not utilized. Doc. 121-12.

3

its arguments as to five (5) of the serial numbers."

Boeing has now filed, with leave of court, a Sur-Reply addressing the four aircraft cited by plaintiff as "an illustrative example of the appropriateness" of their Rule 56(f) motion. The SurReply includes a supplemental declaration from Anthony Williams stating that Boeing initially sold the aircraft to the Itochu Corporation and Itochu then transferred the aircraft to the U.S. Air Force. Williams states that Boeing made some modifications to the planes to make them suitable for use with AWACS equipment, but Itochu paid for those modifications as part of the direct sale. Boeing provides a Bill of Sale for each aircraft allegedly showing that the planes were initially sold by Boeing to the Itochu Corporation prior to the date of the registrations cited by Relators.

Rule 56(f) "allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion." *Employers Reinsurance Corp. v. Newcap Ins. Co., Ltd.*, 209 F.Supp.2d 1184, 1187, n. 3 (D. Kan. 2002) (*citing Price v. Western Resources, Inc*., 232 F.3d 779, 783 (10th Cir.2000)). The general principle of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Price*, 232 F.3d. at 779 (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 n. 5 (1986)). The protections of Rule 56(f) can be only be applied if a party satisfies certain requirements, including the filing of an affidavit explaining why facts precluding summary judgment cannot be presented, identifying the probable facts not available and what steps have been taken to obtain them, and explaining how additional time will enable the nonmovant to rebut the movant's allegations of no genuine issue of fact. *Id*.

Relators' showing in support of their motion under Rule 56(f) is thin. Their initial

affidavit was inadequate and was based on an apparently faulty explanation that the absence of FMS involvement may have been due to skewing or substitution of aircraft on the master schedule. Boeing's declarations refute that theory. Relators' supplemental affidavit stated that Boeing failed to make any showing with respect to five of the aircraft. That assertion was incorrect; Boeing's declarations discussed each of the twenty-five aircraft listed in the motion. Moreover, Relators have not stated whether they made any attempt to obtain this information from the U.S. Government, on whose behalf they are asserting the FCA claims. And whether further discovery will allow Relators to identify additional aircraft to be added to their claims, as Relators say in their affidavit, has no bearing on whether Boeing made any claims to the U.S. government for these twenty-five aircraft. Relators have now belatedly cited a factual basis for discovery as to some of the aircraft, although Boeing's supplemental affidavit arguably makes even that showing appear dubious.

The court recognizes that Relators have not yet received many of the documents they requested from Boeing. Defendants' discovery responses in this case have been delayed in part because Relators did not oppose several prior requests by defendants to extend the time for such responses. Were it not for these extensions, the court would likely be unsympathetic to Relators' claim that the have not had a sufficient chance to gather the information they need to answer Boeing's motion. Under Rule 56(f), the court may order a continuance to allow further discovery or may "issue any other just order." Given the liberal standards governing Rule 56(f), and out of an abundance of precaution, the court will grant Relators a limited extension of time to conduct additional discovery before responding to the motion for partial summary judgment. The court concludes that a sixty-day continuance is sufficient and appropriate. The court will not attempt to

determine precisely the permissible scope of such discovery; that issue is in the hands of the Magistrate.  The court will note that Relators' response does not justify a general rummaging of Boeing's files.  The documents or depositions necessary to address whether these particular sales or leases were paid for by the U.S. Government under the FMS program, as plaintiffs allege, or whether they were direct commercial sales, as Boeing states, would appear to be quite limited.  *Cf. Natural Wealth Real Estate, Inc. v. Cohen*, Slip Copy, 2008 WL 511761, *3 (D.Colo., Feb. 21, 2008) (Rule 56(f) "is not a license for a fishing expedition, especially one embarking so inexplicably late in the season.").

The court declines Boeing's alternative suggestion to order the Relators to pay the costs of such discovery if their inquiry is ultimately unsuccessful.  Rule 56(g)  provides in part that the court may order a party to pay expenses if an affidavit is submitted under Rule 56 in bad faith or solely for delay.  Defendants have not shown that Relators' affidavit meets that standard.

*Conclusion*.

Relators' Motions for Leave under Rule 56(f) (Docs. 130, 165) are GRANTED.  Relators are granted 60 days from the date of this order to conduct discovery relating to defendants' motions for partial summary judgment and to file their response.  IT IS SO ORDERED this  24th Day of April, 2008, at Wichita, Ks.

                                                    s/Wesley E. Brown
                                                    Wesley E. Brown
                                                    U.S. Senior District Judge