# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA, ex rel** | ) | |
| **TAYLOR SMITH, JEANNINE PREWITT,** | ) | |
| **and JAMES AILES,** | ) | |
| | ) | |
| **Plaintiffs and Relators,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 05-1073-WEB** |
| | ) | |
| **THE BOEING COMPANY and** | ) | |
| **DUCOMMUN, INC.,** | ) | |
| **f/k/a AHF-DUCOMMUN,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

1. Relators' Motion to Compel (Doc. 253);

2. Boeing's Motion to File a Surreply (Doc. 285);

3. Boeing's Motion for a Protective Order (Doc. 315); and

4. Boeing's Motion for a Protective Order (Doc. 332).

The rulings are set forth below.

## Background

Relators are or were Boeing employees assigned to investigate the manufacturing

activities of Ducommun, a Boeing component part supplier.  Highly summarized, Relators allege that they discovered serious defects in the manufacturing and quality control functions at Ducommun.  Relators contend that these defects resulted in the delivery, over a period of years, of unapproved, bogus, and/or nonconforming parts by Ducommun to Boeing.  These unapproved parts were installed by Boeing in aircraft sold to the United States.  Relators seek to recover, on behalf of the United States and themselves, damages, civil penalties and other relief based on defendants' submission of false payment claims to the United States in violation of the Civil False Claims Act ("FCA"), 31 U.S.C. 3729, *et seq.*  Relators also seek damages from Boeing for violations of the anti-retaliation provisions of the FCA, 31 U.S.C. 3730(h).

### Relators' Motion to Compel

Relators move to compel Boeing "to properly respond to Relators' Exhibit A related discovery requests and to produce deposition transcripts, witness statements and sworn statements of identified witnesses." (Doc. 253, p. 1).  Specifically, Relators request an order directing Boeing to produce documents responsive to Relators' "compromise proposal."  Boeing opposes the motion, arguing that Relators' requests impose burdens "vastly disproportionate to the relevance of the requested documents."  The following explanation of "Exhibit A" and the disputed discovery requests provides context for the parties' arguments.

In July 2000 Relators (then employed by Boeing) conducted a manufacturing audit

of Ducommun and discovered defects in the "process of manufacture" and "quality assurance" functions at Ducommun.[1]  While working on the audit, Relators compiled a list of *all* fuselage component parts that Ducommun manufactured for Boeing during the relevant time period.  This list is referenced as "Exhibit A" in the production requests submitted to Boeing.  Attached as "APPENDIX 1" is a summary by Relators of the requests and responses.  The appendix provides context with which to evaluate Boeing's production responses to the so-called "compromise proposal" by Realtors.[2]

During the "meet and confer" process, Relators offered a compromise concerning the disputed production requests which Relators believe would narrow the scope of production to nine categories of documents *for all Boeing aircraft with Exhibit A parts.*  The nine categories are:

> 1.   Non-Conformance Reports ("NCRs");
>
> 2.   Corrective Action Reports ("CARs");
>
> 3.   Supplier Support Center Requests for Assistance ("RFAs");
>
> 4.   Supplier Evaluation Reports ("SERs");
>
> 5.   Supplier Audit Reports ("SARs");
>
> 6.   Boeing's records of communication with owners/operators/end users

---

[1]   The "explanation" includes allegations by Relators and should not be construed as a judicial determination concerning factual issues in the case.

[2]   As explained in greater detail below, Relators do not move to compel individual production requests but instead seek an order compelling Boeing to produce documents pursuant to the terms of Relators' "compromise proposal."

of Boeing aircraft containing Exhibit A parts regarding the Exhibit A parts' structural integrity, inspection, repair, replacement, and remaining life expectancy of said aircraft;

7.   Corrosion level findings reports for areas of the fuselage containing the Exhibit A parts for 737, 747, 757, 767, and 777 as provided under the Boeing Aging Airplane Corrosion Prevention and Control Program;

8.   All non-routine maintenance documents relating to the ***areas of the fuselage containing the Exhibit A parts*** for the above aircraft created by authorized repair stations on account of a Boeing Maintenance Manual deficiency found during a heavy inspection.  For purposes of this request, an "authorized repair station" includes Boeing or any subcontractor of Boeing; and

9.   All warranty claims involving the aircraft fuselage for 737, 747, 757, 767, and 777 and communications related to same.

Doc. 254, pp. 5-9 (emphasis added).  Relators seek an order directing Boeing to produce the documents described in their compromise offer and, as noted above, Boeing opposes this request.

Relators' arguments are relatively straightforward.  First, Relators assert that the discovery requested is relevant because they allege "systemic" manufacturing and quality control problems at both Ducommun and Boeing that resulted in the installation of nonconforming fuselage parts on certain aircraft sold to the U.S. government.  Because Ducommun parts were installed on "other" Boeing manufactured planes, Relators contend that the scope of discovery should extend to the "other" planes.  Second, Relators assert that Boeing's arguments concerning the merits and history of the case are "red herring" rhetoric that should be ignored.  Finally, Relators argue that Boeing has failed to carry its burden of

showing that the inclusion of "other" planes in the scope of discovery is unduly burdensome or expensive, "given the needs of the case."

Boeing cites the nature of the claims, discovery efforts to date, and history of this case in support of its argument that it should not be forced to incur additional, massive document discovery costs. In related arguments, Boeing asserts that the cost of complying with Relators' request for discovery of (1) "areas of the fuselage" containing Exhibit A parts and (2) 767 and 777 model aircraft are disproportionate to the marginal relevance, if any, of the requested documents. For the reasons set forth below, Boeing's arguments are persuasive and Relator's motion to compel with respect to Exhibit A parts shall be DENIED.

The standards concerning the scope of discovery are well established. Rule 26(b)(1) provides:

> **Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense–including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. ***All discovery is subject to the limitations imposed by Rule 26(b)(2)(C).*** (Emphasis added).

The limitations in Rule 26(b)(2)(C) are:

> When Required. On motion or on its own, the court ***must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines*** that:
>
> (i) the discovery sought is unreasonably cumulative or duplicative, or can

- 5 -

be obtained from some other source that is more convenient, less
burdensome, or less expensive;

 (ii) the party seeking discovery has had ample opportunity to obtain the
discovery by discovery in the action; or

 (iii) the burden or expense of the proposed discovery outweighs its
likely benefit, considering the needs of the case, the amount in
controversy, the parties' resources, the importance of the issues at stake
in the litigation, and the importance of the proposed discovery in
resolving the issues. (Emphasis added).

Relevance, at the discovery stage, is broadly construed and generally "a request for
discovery should be considered relevant if there is 'any possibility' that the information
sought may be relevant to the claim or defense of any party." Sheldon v. Vermonty, 204
F.R.D. 679, 689-90 (D. Kan. 2001)(citations omitted).  When the discovery sought appears
relevant on its face, the party resisting discovery has the burden of demonstrating that the
requested information does not fall within the scope of discovery defined under Rule
26(b)(1).  Hammond v. Lowe's Home Centers, 216 F.R.D. 666, 670 (D. Kan. 2003).
Conversely, "when relevancy is not readily apparent, the party seeking discovery has the
burden to show the relevancy of the request." Id.

Once the threshold question of relevance has been satisfied, the analysis proceeds to
whether the requested information is privileged or otherwise limited by the considerations
set out in Rule 26(b)(2)(C)(i), (ii), or (iii).  Generally, the party opposing discovery has the
burden of demonstrating through detailed explanation, exhibit, and/or affidavit that the
request is unduly burdensome or overly broad.  See, e.g., Horizon Holdings Inc. v. Genmar
Holdings, Inc., 209 F.R.D. 208, 213 (D. Kan. 2002).  However, the court may deny a motion

to compel where the discovery request is overly board or unduly burdensome on its face.

See, e.g., Aikens v. Deluxe Financial Services, Inc., 217 F.R.D. 533, 538 (D. Kan. 2003).

Rule 26(b)(2)(C) also specifically authorizes the court through motion or **on its own** to limit

discovery if it finds one of the factors identified in subpart (i), (ii), or (iii).

Relators argue that their requests for discovery concerning "other planes" and "areas

of the fuselage" are relevant because they allege "systemic" manufacturing and quality

control problems; therefore, evidence of problems with Ducommun parts in "other planes"

would be relevant to their FCA claim.[3]  Given the generous and broad construction of

"relevance" in the context of Rule 26(b)(1), Relators' discovery requests satisfy the

"relevance" requirement.[4]

---

[3]

Relators argue that the court's prior ruling (Memorandum and Order, Doc. 208, filed June 3, 2008) concerning Exhibit A and Relator's discovery dispute with Ducommun should govern this motion.  This argument is patently frivolous.  Boeing attempted to inject itself into the earlier dispute between Relators and Ducommun out of a concern that Ducommun's arguments did not adequately address Boeing's interests and that Boeing would be adversely impacted by the Ducommun ruling.  In granting the motion to compel Ducommun to produce discovery related to Exhibit A, this court specifically limited its ruling to the arguments asserted by Ducommun.  Doc. 208, footnote 5.  The court's irritation with Relator's renewed argument concerning the Ducommun ruling is heightened because the court rejected a similar argument by Relators under a "law of the case" theory in a prior opinion.  Memorandum and Order, Doc. 241, filed August 14, 2008.  The current motion is the third time the court addresses this issue.  Relators and their counsel are admonished that sanctions will be imposed for any further arguments that the ruling on the Ducommun motion somehow applies to Boeing.

[4]

By any measure, the "any possibility" standard adopted by courts in construing "relevance" is exceedingly low.  The provisions in Rule 26(b)(2)(C) were adopted to balance this liberal construction and grant the court, where necessary, the authority to impose reasonable limits on the "scope" of discovery.

Although the requests fulfill the "relevance" requirement, the court nevertheless concludes that the burden or expense of the proposed discovery outweighs its likely benefit, considering (1) the needs of the case, (2) the amount in controversy, (3) the parties' resources, (4) the importance of the issues at stake in the litigation, and (5) the importance of the proposed discovery in resolving the issues. The "burden of discovery" is illustrated by Relators' request for discovery concerning "areas of the fuselage" where an Exhibit A part is installed. Part number 146A1283-13 on Exhibit A is used in a structural area known as Section 46 on a model 737NG aircraft. Section 46 contains approximately 5,260 different part types and a total of approximately 8,680 parts. Production of "areas of the fuselage" where an Exhibit A part is installed would greatly expand Boeing's search and review of documents. Relators' request to include 767 and 777 model aircraft also increases the burden and expense of discovery. For example, Boeing estimates a search of the customer communications database would require approximately 10 to 20 employee hours. Gathering NCR and CAR records would require additional employee time. Boeing estimates the total expense for adding the 767 and 777 models at $25,000.[5]

Equally important, the additional burden and expense is not warranted given the "needs of the case" and the "importance of the discovery." This is a False Claims Act lawsuit alleging that Boeing submitted false or fraudulent claims for payment to the United

---

[5]    In the context of money already expended in defending this case, $25,000 is relatively insignificant. However, $25,000 is a significant expense for discovery of marginal value.

States of America in connection with 21 aircraft sold to the government.[6]  The number and

model of aircraft sold to the government are:

> Ten 737 Next Generation (NG) aircraft (Air Force and Navy);
>
> Six 757 aircraft (Air Force); and
>
> One 747 aircraft (Air Force).

Relators assert no claim that 767 or 777 models were sold to the government in violation of

the False Claims Act.

Exhibit A consists of six pages identifying a total of 286 parts.  The 286 parts break

down as follows:

> 206 parts for the 737NG model aircraft;
>
> 48 parts for the 757 model aircraft;
>
> 2 parts for the 747 model aircraft;
>
> 25 parts for the 767 model aircraft, and
>
> 5 parts for the 777 model aircraft.

Boeing is producing the relevant documents for the aircraft which were actually sold to the

government and which are the subjects of plaintiff's FCA claims.  In addition, Boeing is

producing the relevant documents for the Exhibit A parts for the three models (737NG, 757

---

[6]

Judge Brown recently granted Boeing's motion for partial summary judgment on
25 other aircraft.  Memorandum and Order, Doc. 360.  Relators requested and were
granted permission to conduct limited additional discovery under Rule 56(f).  Ultimately,
Relators presented no evidence of any kind that Boeing requested or received payment
from the U.S. government for the 25 planes.

and 747). Boeing's production of records concerning thousands of aircraft matching the three models sold to the government is more than an adequate "scope of discovery" for Relators' allegation of a "systemic" manufacturing problem. Under the circumstances, the "needs of the case" simply do not warrant a search for documents concerning two models of planes that were not even sold to the government. The "importance of the discovery" concerning the 767 and 777 is extremely marginal, at best.[7]

The "amount in controversy" factor is difficult to evaluate because Relators have never disclosed the monetary damages allegedly suffered by the government. Boeing argues that Relators "have no knowledge of the amount of damages, if any, suffered by the government in this case." Doc. 275, p. 13 (citing deposition testimony). Relators counter that "the dollar amount involved in the submission of these false claims and sale of these aircraft with nonconforming parts is substantial." Doc. 284, p. 12. No doubt the dollar amount of the sale of the aircraft was "substantial." However, Relators have provided no specifics concerning the actual amount in controversy (the claimed damages). Relators, as plaintiffs, have the burden of explaining the amount in controversy and this factor weighs against their claim for broader discovery.

The third factor, the "resources of the parties" is a neutral factor in the court's

---

[7]

   The 25 parts from Exhibit A for the 767 aircraft and the 5 parts for the 777 are not interchangeable with the parts used in the construction of the 737NG, 757, and 747. Although the 30 parts for the 767 and 777 were manufactured by Ducommun, the reasonable conclusion is that a "systemic" problem would be revealed by records concerning the 256 parts installed on thousands of 737NG, 747, and 757 model aircraft.

analysis.  Neither party discussed this factor in any detail.  However, the single fact that Boeing is a large company does not justify the imposition of costs and expenses associated with discovery of marginal value.

The court finds that the fourth factor, "the importance of the issues at stake in the case," is also a neutral factor.  Without expressing any opinion concerning the ultimate outcome in this case, the court notes that the government declined to intervene in this lawsuit and the FAA and Defense Department have twice investigated and rejected Relators' claims.

In summary, the court denies Relators' request to compel production of the materials described in their proposed "compromise" based on Rule 26(b)(2)(C).  Relators' requests for discovery related to (1) "areas of the fuselage" contained in Exhibit A and (2) 767 and 777 aircraft are expressly rejected.

With respect to Relators' request for deposition transcripts and statements of certain individuals, Boeing agrees to "search and produce for a narrowed list of 23 witnesses identified by relators, prior testimony related to the aircraft at issue, Boeing's quality assurance program and processes, government contracting and invoicing, Boeing's relationship with Ducommun, and FAA oversight approval of the foregoing."  Boeing's Response, Doc. 275, p. 16.  Boeing's offer of production is sufficient.

**IT IS THEREFORE ORDERED** that Relators' motion to compel (**Doc. 253**) is

**DENIED.**[8]

## Boeing's Motion for Leave to File a Surreply

Boeing moves for leave to file a surreply in connection with Relators' motion to compel.  The proposed surreply provides appropriate additional responses to matters raised in Relators' reply brief.  Moreover, no response in opposition has been filed; thus, the motion shall be granted as uncontested.

**IT IS THEREFORE ORDERED** that Boeing's motion for leave to file a surreply **(Doc. 285)** is **GRANTED.**  The "Surreply" attached to Boeing's motion shall be deemed "filed" and no further action is necessary by Boeing.

## Boeing's Motion for a Protective Order for Rule 30(b)(6) Depositions

Relators served Boeing with a twelve-page Rule 30(b)(6) deposition notice containing 45 topics and Boeing moved for a protective order.[9]  Highly summarized, Boeing argues that the topics suffer from one or more of the following faults:  (1) unduly burdensome, (2) too general, (3) available through simpler means, (4) vague, and/or (5) beyond reasonable

---

[8]

Relators' reply brief contains a request that the court grant their request to compel Production Request No. 41 concerning organizational charts.  However, as Boeing correctly notes, Relators' motion sought to compel production consistent with the "compromise" proposal and did not include Request No. 41.  The court declines their request to compel Production Request No. 41.

[9]

At least three of the "topics" contain sub-topics.  For example, Topic No. 19 contains eleven sub-topics.

bounds.  For the reasons set forth below, Boeing's motion shall be GRANTED IN PART and DENIED IN PART.[10]

     As a preliminary matter, Relators argue that Boeing failed to engage in a meaningful "meet and confer" process; thus, Relators did not have an opportunity to explain their Rule 30(b)(6) topics.  The court has reviewed the various letters and email exchanges between counsel and finds that the failure to engage in a meaningful "meet and confer" process lies with Relators, not Boeing.  Boeing sent Relators a May 8, 2009 letter detailing its concerns, objections, and/or clarifications to each listed topic.  Relators' counsel responded on May 11,

---

[10]

    The organization of Boeing's brief and reference to the specific "topic" leaves much to be desired.  For example, Boeing's first reference to individual topics begins on page 9 with a reference to Topic Nos. 19(a), 19(b) and 8.  Page 10 references Topic Nos. 19(g), 7, 12 and 14 and so on.  Buried on page 19 is the first and only reference to Topic No. 1.  Finally, on page 21 the court learns that Boeing is willing to produce Rule 30(b)(6) witnesses concerning Topic Nos. 20-25 and 29.  Considerable effort was required to even discern that Boeing had referenced all 45 deposition topics in its motion for a protective order.  Because of Boeing's haphazard approach the court has not ruled on the deposition topics in chronological order.

2009 with a letter that resembles a rant rather than a reasoned response.[11]  Significantly,

Relators did not address the individual "topics" and respective issues raised by Boeing.

    Relators also operate under the misguided view that "a corporation receiving a Rule

30(b)(6) cannot claim that the information may be obtained more easily by other means."

Relators' Response Brief, Doc. 316, p. 8.  However, Fed. R. Civ. P. 26(b)(2)(C) expressly

authorizes the court, ***on motion or on its own***, to limit discovery otherwise allowed by the

rules of civil procedure if the court determines that the information can be obtained from

-----

[11]

    The following quote from the May 11, 2009 letter illustrates the court's
characterization:

> Arriving at the 15th and last page of your letter you cannot imagine our
> intense pleasure at learning that with Paragraph 43 we were finally
> able to draft a designation (subject to some reservations) you did not
> find "vague," "overbroad," "burdensome," or "irrelevant."  We hope
> you can understand our disappointment when our initial joy was
> shattered with the realized Pyrrhic nature of our victory.  In Paragraph
> 43 we referenced contracts that were identified in Paragraph 37; and
> apparently we won't get answers to those questions because you
> objected that Paragraph 37 is "irrelevant and unduly burdensome" and
> more.  Thus, it appears, we will have witnesses to answer questions
> about (Paragraph 43) terms which are found in (Paragraph 37)
> contracts that we won't have witnesses to identify.  I imagine it will be
> a bit like listening on [sic] one hand clapping.
>
>                          *   *   *
>
> Your letter is such an utter repudiation of our Notice that our response
> to your, "Oh yeah?" can only be an emphatic, "YEAH."

Contrary to Relators' suggestion of "boilerplate" objections, Boeing's May 8 letter
contains detailed objections and clarifications for each topic.  Relators' May 11 letter did
not discuss any individual topics beyond the language quoted concerning Topic Nos. 37
and 43.

some source that "is more convenient, less burdensome, or less expensive."  Rule 26(b)(2)(C)(i).  For example, Topic No. 4 seeks the "identities and last known whereabouts of all members of Boeing senior management ... with whom the findings of the ... tooling audit reports ... were provided and/or shared."  The names and last known addresses of potential witnesses can be obtained more conveniently and with less expense through a simple interrogatory.  Requiring Boeing to designate a corporate representative to appear for a deposition to provide the names and addresses of witnesses is a waste of time and money.  Topic Nos. 5 and 6 suffer from similar problems and are more appropriately addressed with simple interrogatories.

With respect to Topic Nos. 2, 3, 18 and 41, Boeing represents that it has no corporate knowledge of the four topics.  Relators do not challenge this representation but argue:  "so producing a Boeing witness to testify that Boeing has no corporate knowledge should not be an issue."  Relators' response, Doc. 316, p. 11.  This court will not require a witness to appear at a deposition merely to confirm a position that Relators do not dispute or challenge.  Counsel's representation with respect to Topic Nos. 2, 3, 18, and 41 is as binding on Boeing as a Rule 30(b)(6) designee.

Topic No. 28 requests a Rule 30(b)(6) witness for "Roll Numbers for all parts in Deposition Exhibit 5."  Boeing argues that it should not be required to produce a witness who merely recites a list of numbers and that this request would be better resolved with an interrogatory.  Relators counter that Ducommun part numbers installed in Boeing aircraft have been changed over the years and that Relators cannot track the numbers without this

information.  The court agrees that, in the first instance, this information is more efficiently secured through a simply interrogatory.[12]

Boeing objects that a number of topics are unduly burdensome and require Boeing to search through voluminous documents that have already been produced or made available for inspection.  Relators do not dispute that the requests are burdensome but argue that the information requested by Topic Nos. 19, 31, 32, 34, 35, and 36 is necessary so that Relators can "be sure they have a complete set" and/or that Boeing's records are "complete and compliant."  The court will not require Boeing to produce a Rule 30(b)(6) witness merely for the purpose of verifying that all relevant requested documents were produced.  See Wolfe v. Ford Motor Co., No. 06-1217, 2008 WL 294547 (D. Kan. Feb. 1, 2008).

Boeing also argues that it has no knowledgeable witnesses to discuss Topic Nos. 10, 11 and 15 because the employees who handle those areas no longer work for Boeing and work for a Boeing supplier, Spirit.[13]  Boeing asserts that Relators know the names of those witnesses and plan to depose them.  At a minimum, Boeing argues that the Rule 30(b)(6) depositions should be deferred until after those depositions are completed.  The court agrees.

---

[12]

The court will reconsider its ruling if it later appears that there exists an unexplained complexity in cross-referencing part numbers.  However, the cross-referencing information is something that the parties should be able to resolve without further judicial involvement.

[13]

Topic No. 10 also includes the phrase "all related documents."  In the context of the request, the term "all related documents" is overly broad and does not provide the "reasonable particularity" required by Rule 36(b).  Similarly, Topic No. 12 contains the term "documents relating thereto" that, in the context of the request, is not specific enough for Rule 36(b).

Taking the deposition of key fact witnesses may eliminate or greatly reduce the need for Rule 30(b)(6) deposition testimony.[14]

Topic No. 32 requests the production of a witness to discuss "Boeing's retrieval, search, investigation, disclosure, and production of its records in this litigation." Boeing objects that the request seeks work product and attorney-client privilege information. The court agrees and Boeing's request for a protective order concerning this topic is granted.

Topic Nos. 37-43 relate to Boeing's contract with Ducommun. Boeing argues that the contracts between Boeing and Ducommun have nothing to do with the government or any fraud alleged in this case. The relevance of these requests is not apparent and Relators have not shown how Boeing's contracts with Ducommun are relevant to the claim in this case that Boeing submitted fraudulent invoices or payment requests to the U.S. government.[15] Accordingly, Boeing's request for a protective order concerning these topics is granted.

Topic No. 17 requests a witness to testify about Boeing's "zero defect program." Boeing objects to this request, explaining that it does not understand the request and asks Relators to provide some context or a citation to Bates-stamped documents. Relators do not provide any clarification; therefore, Boeing will not be required to produce a witness for this

---

[14]

Little is gained by requiring Boeing to interview the non-party witnesses to prepare and provide Rule 30(b)(6) testimony at this time and then have the parties turn around and depose those very same witnesses.

[15]

At most, Relators explain that they want to know Boeing's understanding of the terms of the contracts with Ducommun. This explanation does not demonstrate relevance to the claim that Boeing submitted fraudulent payment requests to the government.

topic.

Topic Nos. 7, 8, 9, 14, 16, 30 and 44 request Rule 30(b)(6) deposition testimony for voluminous records, some reaching back to 1994. As currently drafted, the requests are too general in nature and unduly burdensome.[16] Accordingly, Boeing's request for a protective order is granted. However, Relators may revise and narrow their requests.

Boeing agrees, with certain clarifications, to produce Rule 30(b)(6) witnesses responsive to Topic Nos. 20, 21, 22, 23, 24, 25, and 29. Relators agree that these seven topics are uncontested and not in issue.

Topic No. 26 seeks information concerning Ducommun's "interdivisional supplier business status" with Boeing and Topic No. 45 seeks information concerning Boeing's decision to delegate "source authority" to Ducommun. The court is satisfied that these two topics are relevant and Boeing's motion for a protective order shall be denied. Topic No. 1 seeks information concerning Boeing's production commitments and schedules for 737 NG aircraft from 1998-2002. Because this information is relevant to show whether Boeing "cut corners" to meet production commitments, Boeing's request for a protective order is denied.

In summary, Boeing agrees to provide Rule 30(b)(6) witnesses responsive to Topic

---

[16]

Relators argue that they should not be required to disclose their line of deposition questions. However, when voluminous documents extending over years are involved, an entity preparing Rule 30(b)(6) witnesses must understand what is being requested. In short, the entity preparing a Rule 30(b)(6) deposition witness must have some understanding of the nature of the deposition questions; hence, the requirement of describing the topics with "reasonable particularity." Simply asking a party to provide testimony concerning a 390-page contract or a 190-page manual does not satisfy the requirement of reasonable particularity.

Nos. 20, 21, 22, 23, 24, 25 and 29.  Boeing's request for a protective order concerning Topic Nos. 1, 26, and 45 is DENIED.  The motion for a protective order is GRANTED with respect to the remaining "topics" with the caveat that Relators may revise and narrow Topic Nos. 7, 8, 9, 14, 16, 30, and 44.

**IT IS THEREFORE ORDERED** that Boeing's motion for a protective order **(Doc. 315)** is **GRANTED IN PART** and **DENIED IN PART,** consistent with the rulings herein.

### Boeing's Motion for a Protective Order for Three Former Employees

Relators served Rule 45 deposition subpoenas on Seddik Belyamani, Walter Gillette, and Thomas Schick, three retired Boeing executives.  The deposition subpoenas were issued because they were among seventeen Boeing employees listed in an August 21, 2000 cover memo concerning a draft audit report.  Boeing moves for a protective order, arguing that the depositions are unnecessary and a waste of resources because the draft audit was never sent to these three executives and they have no testimony to offer concerning the audit.

The court is satisfied that Boeing, on behalf of the three retired executives, has shown good cause for granting the protective order.  First, contrary to Relators' arguments, the August 21, 2000 memo does not say that the "draft" was sent to the three executives.[17]  More

---

[17]

The cover memo asks Boeing Wichita managers Ron Brunton and Vernell Jackson for review and comment prior to release and then goes on to state that an executive summary would be included in a monthly report addressed or copied to seventeen named individuals.

importantly, none of the three former executives had responsibilities involving anything to do with supplier quality, supplier audits, manufacturing activities, production engineering, tooling engineering, or Ducommun and none have any recollection of seeing the audit report. Finally, Relators have noticed the depositions of the authors and recipients of the August 21, 2000 memo and four additional persons who *were actually* copied with the audit report. Relators' request to take the depositions of the three former executives to confirm their declarations is a waste of time and borders on harassment.

**IT IS THEREFORE ORDERED** that Boeing's motion for a protective order concerning the three retired employees (**Doc. 332**) is **GRANTED.**

A motion for reconsideration of this order under D. Kan. Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established.  A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence.  Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate.  Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by the court in Comeau v. Rupp.  The response to any motion for reconsideration shall not exceed three pages.  No reply shall be filed.

-20-

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 26th day of August 2009.

S/ Karen M. Humphreys
_____
KAREN M. HUMPHREYS
United States Magistrate Judge

# APPENDIX 1

## RFP No. 13

**Request:** Shipping and receiving documents and/or records of sale for any of the parts listed in Exhibit A, including spare part orders.

**Current Status:** Boeing has agreed to search for spare parts sales for 737NG, 747 and 757 parts listed on Exhibit A sold to the government but has not agreed to search for spare part sales for 767 or 777 parts or any model spare part that was sold to a non-U.S. government entity.

## RFP No. 16

**Request:** Maintenance documents for the time period 1994-2004 relating to Exhibit A parts installed on any Boeing aircraft.

**Current Status:** Boeing has agreed to maintenance documents for Exhibit A parts relating to non-government, commercial aircraft, except for maintenance documents for Exhibit A parts relating to 767 or 777 Boeing aircraft.

## RFP No. 19

**Request:** Documents relating to studies conducted, funded, or initiated by Boeing or any other entity that evaluated the safety features of the parts identified on Exhibit A and any aircraft containing these parts.

**Current Status:** Boeing objects to producing documents for Exhibit A parts relating to non-government, commercial aircraft, including Exhibit A parts relating to 767 or 777 Boeing aircraft.

## RFP No. 21

**Request:** Documents relating to any and all operators' conferences, meetings, or substantially similar gathering, for the Boeing 737 NG, 757, 767, 747, and 777 aircraft, all models, or substantially similar military models.  (These conferences are designed to allow owners to voice concerns over issues including problems with parts.)

**Current Status:** No responsive documents have been produced to date and Boeing notes that operator's conferences on 737NG aircraft contained no such documents.  Additionally, Boeing objects to producing documents relating to 747, 757, 767 and 777 aircraft on the basis of relevance.  These are relevant documents.

### RFP No. 22

**Request:** Boeing engineering approvals for any modifications or repair of parts identified in Exhibit A.

**Current Status:** Boeing objects to production of requested documents relating to non-government aircraft containing Exhibit A parts, including 767 and 777 model aircraft.

### RFP No. 40

**Request:** Materials relating to Boeing NCR's ("non-conformance reports") referencing part numbers identified in Exhibit A.

**Current Status:** Boeing will agree to produce NCR's and other quality assurance/corrective action documents for 767 and 777 model aircraft as part of a compromise that limits Relators' access to other discoverable materials.  Otherwise, Boeing objects to production of documents relating to non-government 767 and 777 model aircraft.

### RFP. No. 41

**Request:**  Documents comprising or related to the organizational charts for the Boeing Commercial Airplane Group, or any other groups who were involved in the manufacture of the parts identified in Exhibit A, that were in effect between 1994 through and including 2004.

**Current Status:** Boeing has completed what it considers a "more that reasonable production of organizational charts."  However these charts do not track the additional areas that are at issue in an FCA case–final assembly and quality assurance, delivery, and invoicing–those activities took place at sites other than Boeing-Wichita.

### RFP No. 50

**Request:** Documents relating to corrosion and corrosion prevention concerning Exhibit A parts.

**Current Status:** Boeing objects to producing the requested documents as they relate to non-government aircraft, including 767 and 777 model aircraft.

### RFP No. 52

**Request:** Warranty-related documents for alleged deficiencies in Exhibit A parts on Boeing government aircraft, and on Boeing non-government 737, 767 and 777 commercial aircraft.

**Current Status:** Boeing has agreed to search for warranty claims regarding model 737 non-government, commercial aircraft; however, Boeing objects to warranty-related documents for alleged deficiencies in Exhibit A parts on 767 and 777 model aircraft.

### RFP No. 53

**Request:** Drawings and specification sheets relating to each part identified in Exhibit A.

**Current Status:** Boeing objects to production of documents related to non-government aircraft, including 767 and 777 model aircraft.

### RFP No. 54

**Request:** Documents concerning Boeing design, data, test reports and computations, engineering tests, etc. conducted to determine airworthiness of Exhibit A parts.

**Current Status:** Boeing agrees to produce any responsive documents concerning non-government 767 and 777 aircraft parts as part of a compromise limiting Relators' right to other discoverable documents. Otherwise, Boeing objects to production of any responsive documents relating to non-government 767 and 777 model aircraft.

### RFP No. 55

**Request:** Documents relating to Boeing engineering analyses or

Ducommun engineering analyses conducted to determine deficiencies in Exhibit A parts.

**Current Status:** Boeing agrees to produce any responsive documents concerning non-government 767 and 777 aircraft parts as part of a compromise limiting Relators' right to other discoverable documents. Otherwise, Boeing objects to production of any responsive documents relating to non-government 767 and 777 model aircraft.

### <u>RFP No. 56</u>

**Request:** Documents related to Boeing and Ducommun engineering changes to any of the parts identified in Exhibit A.

**Current Status:** Boeing objects to production of any responsive documents relating to non-government 767 and 777 model aircraft.

### <u>RFP No. 57</u>

**Request:** Boeing customer service letters or correspondence related to parts identified in Exhibit A.

**Current Status:** Boeing objects to any responsive documents concerning non-government aircraft containing Exhibit A parts, including 767 and 777 model aircraft.

### <u>RFP No. 58</u>

**Request:** Boeing warranty program letters relating, directly or indirectly, to parts identified in Exhibit A.

**Current Status:** Boeing advises that it has not located any warranty program letters. Relators understand that Boeing's response in only for models 737NG, 747 and 757, given its objection to producing documents concerning non-government aircraft.

### <u>RFP No. 59</u>

**Request:** Boeing's service bulletins involving parts identified in Exhibit A.

**Current Status:** Boeing objects to any responsive documents concerning non-government aircraft containing Exhibit A parts, including 767 and 777 model aircraft.

## RFP No. 64

**Request:** Customer Cost Lists for Exhibit A parts.

**Current Status:** Boeing advise that it continues to search for responsive documents.  Relators understand Boeing only continues to search for the cost of lists for 737NGs, 747 and 757 given its objection to producing documents concerning non-government aircraft models.