IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA, *ex rel.* )
TAYLOR SMITH, JEANNINE PREWITT, )
and JAMES AILES, )
                                           )
                    Plaintiffs-Relators, )
                                           )
v.                                         )   Civ. Action No. 05-1073-WEB
                                           )
THE BOEING COMPANY                         )
and DUCOMMUN, INC.,                        )
f/k/a AHF-Ducommun,                        )
                                           )
                    Defendants.            )
_____)

**Memorandum and Order**

This matter is before the court on Relators' objections to two discovery rulings by Chief Magistrate Judge Karen M. Humphreys. The Relators claim Boeing must be sanctioned for its late disclosure of a fuselage fatigue test. Judge Humphreys found sanctions were not warranted because the significance of the test only became apparent after one of Relators' experts called attention to it, and because Boeing had previously made the test available for inspection. Because the Magistrate's rulings have solid support in the record, Relators' objections will be denied.

I. *Summary*.

On March 24, 2011, Relators filed a Motion for Discovery Sanctions. Doc. 557. The motion sought an order precluding the defendants from using or referencing a particular "Fuselage Fatigue Test." Relators argued that Boeing's disclosure of the test was too late: six months after the close of written discovery, three years after initial Rule 26 disclosures, and

"years after being served with document requests specifically targeting fatigue and stress testing." Doc. 558 at 1. The report ("737-800 Fuselage Fatigue Test: Summary and Conclusions") contained the results of extensive testing – including 225,000 simulated flight cycles – on a 737-800 fuselage.[1] Relators asserted that Boeing's production of the report in February of 2011 violated Rule 26(a) and the court's scheduling order setting August 2, 2010 as the fact discovery deadline. They argued that Boeing's failure to timely produce the test was not justified because the test was relevant to Relators' claims and Boeing's defenses, because Boeing was put on notice of the test's relevance by claims in the Second Amended Complaint, because various requests for production sought fatigue-related testing, and because the 45 fact depositions previously conducted put Boeing on notice that fuselage corrosion, fatigue, stress and operational life were all major issues in the litigation. Doc. 558 at 4-6. Relators asserted that the test could not have been overlooked by Boeing, given its expense and importance, meaning Boeing "has no good faith excuse" for failing to produce it in a timely manner. Relators also argued they would be prejudiced by the late disclosure because fact discovery is closed and their experts have already issued reports. They said addressing the report would require reopening discovery and that "[b]y seeking to apply fuselage fatigue test results from a purely commercial model aircraft to the 737-700 series aircraft at issue, Boeing effectively opens the door to its commercial fleet, thus potentially necessitating discovery on fleet-wide fatigue issues, which this Court earlier deemed unduly burdensome." *Id*. at 8. Relators asserted that

---

[1] According to the briefs, the Boeing 737 Next Generation, or "737NG," is the name given to a series of submodels –including the 737-600, 737-700, 737-800, and 737-900 – of the Boeing model 737. The 737NG succeeded the Boeing 737 "Classic" series, which included submodels designated as the -300/-400/ and -500.

Boeing's failure to disclose was in bad faith because Boeing knew it had an obligation to disclose relevant tests, but it "chose instead to sandbag the Relators" by waiting until after the close of discovery. Relators moved for an order precluding use of the test or, in the alternative, for Boeing to pay all fees and costs relating to discovery caused by the late disclosure.

In response, Boeing pointed out that pursuant to a discovery agreement between the parties, Boeing had provided access to its voluminous technical library by means of an index, which was formed with search terms provided by the Relators. Relators were able to choose from the index the particular documents they wanted. The reports in question were listed in the index under various heading, including: "737-800 fuselage fatigue test: summary and conclusions;" "737-800 fuselage fatigue test: teardown summary and conclusions;" and "737-800 fuselage fatigue test: internal loads correlation." Relators requested to inspect well over 100 reports from the library index and copied approximately 10,000 pages, but did not request to see the foregoing test. On December 22, 2010, Relators served their expert reports, one of which set forth a damage theory for the first time that the aircraft sold to the Government had a lesser value because of concerns the aircraft could suffer a catastrophic failure from "widespread fatigue damage" (WFD). At the same time, Relators' stress analysis expert (a former Boeing engineer) submitted a report criticizing Boeing for failing to produce documentation of testing the 737NG for WFD. Boeing says that in response to these allegations, it retained a retired Boeing stress engineer, who pointed out that Boeing had in fact performed a fuselage fatigue test on a 737NG aircraft – specifically the aforementioned tests on a 737-800. Boeing says it promptly emailed a copy of the tests to Relators' counsel when it obtained them on February 18, 2011. It says that on February 21, 2011, Relators' counsel wrote back requesting 44 documents mentioned in the

3

test reports. Boeing agreed not to require a request for production and produced 41 of the 44 documents (3 could not be located) over the next couple of weeks. Relators indicated they would seek further discovery, but instead filed a motion for sanctions to preclude use of the fatigue test.

Boeing argued that it complied with Rule 34 when it made the test results available for inspection. Moreover, it argued the plaintiff's own stress expert should have requested the test documents as part of his analysis. Even if it was a failure to disclose, Boeing argued the failure was both justified and harmless. It said it was justified because Relators waited until their expert disclosures to explain their damage theory of WFD and to claim Boeing had failed to produce documentation of a 737NG fuselage fatigue test. It argued that Relators will suffer no prejudice because the test merely responds to assertions of Relators' expert, the Relators have the ability to obtain any relevant documents, the materials will not interfere with a trial date (no date has been set), and Boeing acted in good faith.

Relators' reply argued that the Complaint "is not the least bit vague" and that the absence of "buzz words" such as "widespread fatigue damage" did not leave Boeing in the dark about Relators' claims. Doc. 577 at 2. They said the Complaint "clearly alleges defects in critical fuselage components that would decrease the structural integrity of the aircraft over time." Moreover, if the test is relevant to Boeing's defense, as it now maintains, Relators argued Boeing had a duty to disclose it in its initial disclosures. Relators said Boeing's theory that it produced the document via the technical library index "is a myth," since the later construction of the index could not excuse Boeing's failure to include the tests in initial disclosures, and also because the three index entries for the test were "buried" in a 150,000-item index and the insufficient

descriptions – including the reference to a 737-800 instead of a 737NG – "neatly obfuscate any possible relevance of the test materials to this litigation." *Id*. at 5.

Judge Humphreys ruled on the motion for sanctions, along with several other pending motions, in an order filed July 22, 2011.  Doc. 581.  She disagreed with Relators' assertion that Boeing should have produced the test results in its initial Rule 26(a) disclosures, finding the significance of the fatigue test documents to Boeing's defense was not apparent from Relators' Second Amended Complaint.  She said the significance only became apparent when Relators' expert criticized Boeing for not having documentation of such tests.  Moreover, she found it equally important that Boeing provided Relators an opportunity in 2008 to review the technical library index and to select the documents they wanted produced.  "If the significance of the fatigue documents were as obvious from the second amended complaint as claimed by relators," Judge Humphreys found, "they should have asked that all of the fatigue tests documents listed in the index be produced in 2008." *Id*. at 12.  As such, she found "Boeing's supplementation of its Rule 26(a) disclosures in 2011 does not warrant the imposition of sanctions." *Id*.  Finally, Judge Humphreys concluded that Relators' various production requests or interrogatories were not sufficiently articulated to trigger a duty to disclose the reports given that the requests were limited to documents "for [Ducommun] parts listed in Exhibit A" and "the subject aircraft."  At any rate, the Judge noted, Boeing had provided the index that made the requested documents available for inspection.  Judge Humphreys thus denied the motion for sanctions.

II. *Objections*.

Relators object that the Magistrate's rulings "are inherently unfair because they contradict an earlier order to the Relators' prejudice."  Doc. 584 at 2.  Relators contend the

Magistrate previously ruled that discovery "should be confined to the specific parts (Ducommun parts) and aircraft (737-700 series) in issue in this case," *id*., but the Magistrate now finds, they say, that their requests were too limited to trigger a duty to produce the tests. "It is clear error," Relators argue, "for the Magistrate Judge to hold that discovery requests that comport with her limitations were not sufficient to timely trigger the production of arguably relevant documents." *Id*. Relators further argue it was error for the Magistrate to find that Boeing was not aware of the significance of the tests until after plaintiffs' expert made an issue of it. They say the Second Amended Complaint contained many allegations relevant to the tests and the Relators issued numerous discovery requests encompassing such tests, so Boeing was on notice of claims of fuselage stress. Relators also object to the Magistrate's finding that the technical library index provided by Boeing satisfied Boeing's disclosure obligations, because they say the index did not disclose the relevance of the tests and the Relators "therefore never had occasion to pick this particular needle out of the technical library haystack." *Id*. at 9. Relators say the relevance of it was obscured because none of the 21 aircraft currently at issue are 737-800 aircraft and no indication appeared in the index that the results could be extrapolated to the 737-700 series. They argue Boeing "effectively concealed" the relevance of the test, and "further obfuscated the relevance" by representing to the Magistrate that they were producing all documents relevant to the aircraft that are the subject of the instant claims. Relators also contend the Magistrate erred in finding that Relators' discovery requests did not put Boeing on notice that the tests were relevant, again complaining that the limitations in their discovery requests were a product of the Magistrate's prior rulings, and arguing that this "results in the Relators being whipsawed with contradictory interpretations of Boeing's discovery obligations." *Id*. at 15. Relators contend

they will suffer prejudice if Boeing is allowed to use the tests and they contend the Magistrate ignored that prejudice in her ruling.

III.  *Discussion*.

Under Fed.R.Civ.P. 72(a), a party may file an objection to a magistrate judge's nondispositive order.  Upon review, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a).  The clearly erroneous standard applies to factual findings; it is a significantly deferential standard that requires the reviewing court to affirm unless it is left with the definite and firm conviction that a mistake has been committed.  *See Sloan v. Overton*, 2010 WL 4861354 (D. Kan., Nov. 23, 2010) (citations omitted).  *See also Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988); *Concrete Pipe & Prods. v. Construction Laborer Pension Trust*, 508 U.S. 602, 603 (1993).

The Magistrate found that the significance of the fatigue test documents was not apparent from the Second Amended Complaint (SAC).  Relators attempt to overcome this finding by citing snippets from the SAC, but nothing in the myriad allegations of the complaint made clear that Relators were claiming widespread fatigue damage to 737NG aircraft.  The court has commented before on the confusing nature of the complaint.  *See* Doc. 86 at 16 ("The court is somewhat at a loss to understand why Relators have not set forth their claims in a more concise and clear fashion.").  Relators' assertion that the complaint "is not the least bit vague" is not the least bit persuasive.  They accuse Boeing of hiding a needle in a haystack, but planting a few vague references to fatigue in a 144-page complaint takes the cake for obscuring a point. In short, Judge Humphreys did not "ignore[] the critical allegations of the SAC;" she simply

7

concluded that Relators' failure to articulate the claim in a clear fashion meant the relevance of the fatigue test was not apparent from the complaint.  That factual finding is supported by substantial evidence and is not clearly erroneous.

It is true that some of Relators' discovery requests were specifically directed at fatigue tests.  But the Magistrate found the requests ambiguous because they asked for tests of the specific Ducommun parts or "the subject aircraft," defined by Relators to mean the specific planes listed in the complaint. Although these requests were certainly closer to the mark, the court cannot say the Magistrate was clearly erroneous in finding that they were not sufficiently articulated to cover the 737-800 fuselage tests. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Nor is Relators' argument persuasive that Boeing was given clear notice of the relevance of the tests by the depositions previously taken.  As Boeing points out, Relators have not cited any deposition testimony addressing whether Boeing conducted fatigue testing on a 737NG fuselage. But even if one assumes the production requests triggered a duty to disclose, the Magistrate's further finding that Boeing made the tests available to the Relators for inspection in 2008 is a logical conclusion supported by the facts.  Several entries for the tests were included in the technical library index that Relators were able to review and use to select any Boeing document relevant to their claims.  Relators complain about the length of the index, but it was compiled from search terms they themselves provided.  It was also searchable by computer.  And its length was clearly due in part to the number of search terms they provided and the scope of items they sought.  (Although as Boeing pointed out, Relators' search terms did not even include the word "fatigue."). In a case involving massive

– even unlimited – amounts of discovery, it is incumbent upon the party making production requests to clearly articulate the items sought. Relators also accuse Boeing of misleading them because the tests were conducted on a 737-800 fuselage rather than a 737-700, and they say Boeing hid the fact that the test was relevant to other 737NG submodels.  Boeing points out that an abstract in the index for one of the tests stated that it was "a structural validation test that exposes a fuselage to a typical set of operating loads experienced by the 737 Next Generation fleet," and that it was designed to identify fuselage fatigue issues "for corrective action in advance of the fleet."  Relators do not dispute Boeing's claim that it has produced over 250,000 documents in discovery in this case at a cost of more than $1 million. It is far more likely on this record that the Relators simply overlooked these documents, given Relators' massive discovery requests, than it is that Boeing engaged in an elaborate scheme to cover-up apparently favorable tests – at the risk of having them excluded – so Boeing could later "sandbag" plaintiffs' experts. Relators fail to offer any persuasive explanation for why Boeing should have realized the significance of the tests to Relators' claims of widespread fatigue damage – claims that were not spelled out in the complaint – but the Relators and their own experts should not have.

Relators also assert that the Magistrate's prior limits on discovery and her order on the motion for sanctions cannot be reconciled. They claim Judge Humphreys previously ruled that discovery should be limited "to the specific ... aircraft (737-700 series) in issue in this case," and suggest she precluded them from seeking information relating to a 737-800 series plane.  Doc. 584 at 2.  That is at best a misconstruction of Judge Humphreys' prior ruling.[2] The prior order

---

[2] Relators change course in a reply brief and argue that the order did not limit discovery in this manner.  Doc. 588-1 at 3.

9

made no mention of the various 737NG submodels (i.e. 737-700 versus 737-800), but rather limited discovery relating to two other models – the 767 and the 777 – because this information was only marginally relevant. *See e.g.* Doc. 364 at 10 ("the 'needs of the case' simply do not warrant a search for documents concerning two models of planes that were not even sold to the government. The 'importance of the discovery' concerning the 767 and 777 is extremely marginal, at best."). Nothing in that order precluded Relators from seeking information relevant to fatigue tests involving 737NG model aircraft, including relevant tests on a 737-800. And Relators' own argument is belied by the fact that they requested and received numerous other titles from the technical library index relating to various 737NG submodels, including the 737-800.

If a party fails to provide information as required by Rule 26(a), the party is ordinarily not allowed to use that information at trial unless the failure was substantially justified or harmless. Fed.R.Civ.P. 37(c)(1). Because this determination is entrusted to the broad discretion of the Magistrate, the Magistrate's determination will be reviewed only for abuse of discretion. *Cf. Neiberger v. Fed Ex Ground Pkg. System, Inc.*, 566 F.3d 1184, 1191-92 (10th Cir. 2009). In this instance, Judge Humphreys findings – that the significance of the tests only became apparent after Relators' experts claimed an absence of testing and that Boeing made the tests available for inspection in 2008 – are not clearly erroneous. These findings support a conclusion that Boeing had no obligation to disclose the tests initially, that it satisfied Rule 34 by making the tests available for inspection in 2008, and that its supplemental disclosure of the tests was substantially justified. Under the circumstances, the Relators have shown no grounds for modifying or setting aside the Magistrate's determination.

IV. *Modification of Scheduling Order*.

In addition to the order denying sanctions, Judge Humphreys granted defendants' request to modify the applicable scheduling order. In support of the motion, Boeing asserted that Relators failed to provide requested expert materials in time to allow Boeing's counsel to prepare for the experts' scheduled depositions, leading Boeing to postpone the depositions. Boeing also stated that Relators indicated an intent to conduct additional discovery relating to the fuselage fatigue tests discussed above.  Boeing said it did not object to reasonable discovery about the tests, and added that Relators' experts should be given sufficient time to review the tests and supplement their reports, if necessary, before being deposed.  Boeing argued that these factors warranted modification of the scheduling order. Defendant Ducommun made a similar request for similar reasons and further noted that health problems encountered by Ducommun's counsel provided an additional reason.  Docs. 553, 554.  Relators basically opposed the motions, arguing that Boeing's disclosure of the fatigue test was in bad faith, that Relators' production responses were not tardy, that Boeing had ample time to prepare for the depositions, and that the Relators would be prejudiced by the proposed modification. Judge Humphreys found good cause for the modification and granted it.  Doc. 582.

Relators object for essentially the same reasons they gave the Magistrate and argue the Magistrate "finesse[d] these deficiencies by summarily granting an extension."  Doc. 584 at 16. "Because a magistrate is afforded broad discretion in the resolution of nondispositive discovery disputes, the court will generally grant the magistrate great deference and overrule the magistrate's determination only if this discretion is clearly abused." *Smith v. MCI Telecommunications Corp.*, 137 F.R.D. 25, 27 (D. Kan.1991). There is no abuse of discretion

11

here. Much of Relators' argument about the scheduling order was premised on their belief that Boeing's fatigue test should be excluded as a sanction – a premise the court has rejected. The court also notes that defendants' briefs laid out several reasons why an extension of the scheduling order was advisable. For example, Boeing said the Relators provided about 10,000 pages of expert discovery requests ten days before scheduled depositions at a time when Boeing's counsel had depositions scheduled in another case. Relators' response chides Boeing for not providing an affidavit to support the alleged conflict and says "[t]en days ought to be sufficient to prepare for virtually any deposition...." Doc. 584 at 16. Such arguments do not show that the Magistrate's determination was an abuse of discretion. The Magistrate agreed with defendants' arguments and ordered the parties to confer and submit appropriate recommendations for revisions. While the judge was not obligated to accept defendants' reasons, those arguments provided an obvious basis for revising the scheduling order. This court is not about to second-guess valid scheduling decisions by a Magistrate Judge who has made herculean efforts to manage discovery in a protracted and difficult case.

*V. Conclusion*. Relators' objections (Doc. 584) to the Magistrate Judge's orders of July 22 and 26, 2011, are DENIED. Relators' Motion for Leave to File Reply (Doc. 588) is GRANTED; the court has considered the Reply in ruling on the objections. IT IS SO ORDERED this  21st   Day of November, 2011, at Wichita, Ks.

                                             Hon. Wesley E. Brown
                                             U.S. Senior District Judge