# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

|  |  |
|---|---|
| UNITED STATES OF AMERICA *ex rel* <br> TAYLOR SMITH, JEANNINE PREWITT, <br> and JAMES AILES, <br> <br> Plaintiffs and Relators, <br> <br> vs. <br> <br> THE BOEING COMPANY <br> and DUCOMMUN, INC., <br> f/k/a AHF-Ducommun, <br> <br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 05-1073-MLB-KMH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS-RELATORS' MOTION TO STRIKE DECLARATION AND DEPOSITION TESTIMONY OF ROBERT EASTIN AS SUPPORT FOR DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

On June 16, 2010, Boeing issued its Third Supplemental Disclosures, naming Robert Eastin as an individual "likely to have discoverable information that Boeing may use to support its claims or defenses". (*See*, Boeing's Third Supplemental Disclosures, which are attached hereto as Ex. A.) Eastin was FAA's Chief Scientific and Technical Advisor for Fatigue and Damage Tolerance. (*See,* Eastin deposition at 23:24-24:2 and 61:13-17, to be filed under seal as Ex. B.) Approximately one week later, on June 24, 2010, Boeing disclosed the May 28, 2010 declaration of Robert G. Eastin (attached hereto as Ex. C), which Boeing now uses in support of its summary judgment motions for liability and damages (Docs. 644 and 646). Eastin reviewed certain technical documents from the Defense Criminal Investigative Service (DCIS) and Boeing, and opined whether they evidenced an unsafe condition in the aircraft. (*See,* Ex. B at 234:12-16, 19-22; 234:24; 235:1-2; and 238:10-19.) Plaintiffs deposed Mr. Eastin starting on July 27, 2010.

Eastin is not a fact witness and lacks personal knowledge regarding Plaintiffs'

1

allegations. He is not an expert witness, as Boeing did not disclose him as such.  Yet Boeing offers Eastin's technical opinions regarding aircraft safety as support for its summary judgment motions.  Under the Rules of Evidence, those opinions are inadmissible.

## **ARGUMENT**

**I.    BOEING MAY NOT OFFER EASTIN'S DECLARATION AND DEPOSITION AS LAY WITNESS TESTIMONY**

FRE 701 states:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

**(a)** rationally based on the witness's perception;

**(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

**(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701 ***"does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness."*** *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1214 (10th Cir. 2011), quoting *Randolph v. Collectramatic, Inc.,* 590 F.2d 844, 846 (10th Cir. 1979) (emphasis supplied).  It only allows lay witnesses to offer "observations [that] are common enough and require ... a limited amount of expertise, if any." *James River*, 658 F.3d at 1214 (citing *United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir. 1995)).  The Third Circuit has explained:

> The prototypical example of the type of evidence contemplated by the adoption of Rule 701 relates to the appearance of persons or things, identity, the manner of conduct, competency of a person, degrees of light or darkness, sound, size, weight, distance, and an endless number of items that cannot be described factually in words apart from inferences.

*James River*, 658 F.3d at 1214, quoting *Asplundh Mfg. Div. v. Benton Harbor Eng.,* 57 F.3d 1190, 1196 (3d Cir. 1995).

2

"[A] person may testify as a lay witness only if his opinions or inferences ***do not require any specialized knowledge and could be reached by any ordinary person***." *LifeWise Master Funding*, 374 F.3d 917, 929 (10th Cir. 2004) (emphasis supplied). Using Rule 701 to admit opinion evidence governed by Rule 702 is improper. *James River*, 658 F.3d at 1216. "Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *Id.*, quoting Advisory Committee's Note to Rule 701, 2000 amendments; *see also Hirst v. Inverness Hotel Corp.,* 544 F.3d 221, 227–28 (3d Cir. 2008) ("Preventing such attempts is the very purpose of subsection (c).").

The declaration and deposition of Eastin are inadmissible under FRE 701. Boeing did not identify Eastin as an expert, and it was confirmed at his deposition that he was not testifying as an expert. (*See,* Ex. B at 22:22-25 and 33:13-14.) Eastin is only a lay witness, and he has no personal knowledge of the facts. (*Id.* at 55:2-21 and 120:1-12.) Moreover, this case deals with such things as multiple levels of contracts, numerous federal regulations, aircraft design and type certifications, production certificate conformities, aircraft drawings and related notes, manufacturing processes, quality assurance requirements, and subcontractor oversights. Opining as to aircraft is technical and complex. Eastin testified:

> [To make a] determination of an unsafe condition there would be many, many, many steps you would have to go through from here just with -- just with this snapshot of what's going on with respect to tooling and that sort of thing, I mean, you are so far away from saying I got evidence of an unsafe condition because, you know, to get there you're going to have to identify parts, identify quantitatively what their physical condition is and then do an engineering evaluation with the correct loads and say what is the impact on that to this particular airplane.

(*Id.* at 229:1-12.) Eastin did none of these things. He only relied on the limited group of documents provided by a DCIS investigator and Boeing. His opinion is technical and well

3

outside the scope of opinions allowed by Rule 701.

## II. EASTIN'S DECLARATION AND DEPOSITION ARE INADMISSIBLE AS EXPERT OPINION

Opinion testimony is inadmissible if not based on sufficient facts or data, or if not the product of reliable principles and methods reliably applied. *James River*, 658 F.3d at 1210. Eastin's testimony should be barred because his qualifications and investigative methodology do not meet the requirements of FRE 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).

FRE 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

>   **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
>   **(b)** the testimony is based on sufficient facts or data;
>
>   **(c)** the testimony is the product of reliable principles and methods; and
>
>   **(d)** the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, a court acts a gatekeeper and must conduct a two-part inquiry. *Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 883 (10th Cir. 2005). First, it "must determine if the expert's proffered testimony—whether it concerns scientific, technical, or other special knowledge—has 'a reliable basis in the knowledge and experience of his [or her] discipline.'" *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1222-23 (10th Cir. 2004); *see Norris*, 397 F.3d at 883. The Tenth Circuit uses the following non-exhaustive list of *Daubert* factors to aid in this determination: "(1) whether a theory has been or can be tested or falsified, (2) whether the theory or technique has

4

been subject to peer review and publication, (3) whether there are known or potential rates of error with regard to specific techniques, and (4) whether the theory or approach has 'general acceptance.' " *Norris*, 397 F.3d at 884. Additionally, a court's focus "generally should not be upon the precise conclusions reached by the expert, but on the methodology employed in reach those conclusions." *Bitler*, 400 F.3d at 1223. Second, a court "must further inquire into whether proposed testimony is sufficiently 'relevant to the task at hand.' " *Norris*, 397 F.3d at 884.

Here, Eastin's declaration and deposition may not be offered as expert opinion because Boeing did not timely disclose Eastin as an expert. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757-58 (7th Cir. 2004); *Montoya v. Sheldon*, 286 F.R.D. 602, 619 (D. N.M. 2012). Even if he had been timely disclosed, his testimony still is inadmissible under FRE 702, for the following reasons:

### A. Eastin Has Admitted That He Is Unqualified To Render The Opinions

The admission of a lack of expertise is powerful evidence weighing in favor of exclusion. In *In re Cessna 208 Series Aircraft Products Liab. Litig.*, 2009 WL 3756980 (D. Kan. 2009), the court ruled that a witness could not testify whether aircraft were properly certified for flight in certain conditions where he admitted his lack of expertise. Moreover, an expert in helicopter certification could not testify to certification of fixed wing aircraft because it was outside the "reasonable confines" of his expertise. *Id.* at *13, 14.

Eastin admittedly had no knowledge of the facts developed in discovery. (*See,* Ex. B at 55:2-21 and 120:1-12.) He had not read full deposition transcripts nor reviewed relevant exhibits. (*Id*. at 120:1-12 and 225:19-23.) He admitted his unfamiliarity with the ATA design requirements and variability controls that underlie the 737NG type design; he has never seen or asked to review the 737NG part drawings. (*Id*. at 80:7-10; 84:8-24; 150:22-151:16; 174:14-25;

and 237:1-12.)  Eastin is not qualified to address airworthiness or manufacturing errors.  (*Id*. at 30:6-14 and 44:11-13.)  "What happens in the shop" is "[n]ot my area."  (*Id*. at 30:6-14.)  He hasn't a "clue" about how hardware variability control applies to assembly.  (*Id*. at 157:20-21.)  He does not know specific differences between fuselages of the 737 Classic and the 737 NG except skin gauge.  (*Id*. at 80:14-16 and 80:23-81:5.)  He never worked with Boeing's drawing system, which is different from other drawing systems.  (*Id*. at 86:18-22.)  He has no familiarity with studies discussing the use and impact of computerized design on the aviation industry (*Id*. at 71:7-14) and no familiarity with studies about computer-aided manufacturing techniques and how they impacted the aircraft industry (*Id*. at 72:15-18).  He has not researched or written on statistical process control (*Id*. at 77:15-22).  He has no training in quality systems (*Id*. at 79:12-14).

Most significant, Eastin is not a "type certificate person" (*Id*. at 92:21).  He does not work with the federal aviation regulations (FAR) (Title 14, Part 21) that are highly relevant here.  (*Id*. at 89:1-3 and 89:6-8.)  He does not approve anything; and he does not make type certification decisions or review production certifications.  (*Id*. at 88:3-19.)

Given his admitted shortcomings, Eastin is unqualified to opine as to Plaintiffs' allegations of FAR violations regarding the 737NG type design and production certificates.

### B.   Eastin Offered Boeing's Opinions For Purposes Of Litigation

Testimony created for the purpose of litigation weighs against expert witness testimony admissibility.  *See, e.g., Cloud v. Pfizer Inc.,* 198 F. Supp. 2d 1118, 1133–36 (D. Ariz. 2001) (witness opinion developed expressly for litigation without exploring other theories or reviewing all available evidence was unreliable for use in summary judgment proceeding); *Norris*, 397 F.3d

6

at 886–87 (opinion evidence unreliable where expert efforts not peer-reviewed, developed independent of litigation, or generally accepted by the scientific community).

Here, Boeing solicited Eastin's testimony. Boeing's attorneys prepared his declaration. (*See*, Ex. B at 56:2-7.) Boeing lacked authority to seek Eastin's opinions because Eastin lacked authority to give official FAA opinions for all purposes. (*Id*. at 22:22-25 and 56:8-57:8.) Prior to meeting with Boeing, Eastin was unfamiliar with ATA work and its applicability to this matter. Eastin simply accepted Boeing's description of ATA at face value without even reviewing documents about it. (*Id*. at 134:12-135:7.) Though Eastin's declaration is allegedly "based on [his] understanding of ATA," his testimony confirms his lack of understanding. (*Id*. at 176:11-13.) Eastin did not believe that an understanding of the ATA process was necessary (*Id*. at 174:14-25). He did not want to know Boeing's statistical tolerance requirements. (*Id*. at 175:2-5.) He did not care about document or drawing No. 800-10438, Ex. 625. (*Id*. at 175:6-16.) He found it unnecessary to know of Ducommun's ATA capability acceptance document. (*Id*. at 176:14-21.)

Eastin's declaration and testimony were effectively created by Boeing for the purpose of this litigation and should be excluded.

### C. Eastin Relied On Incomplete Information

Courts have excluded testimony where an expert relies on incomplete, speculative, or otherwise unreliable information. In *Miller v. Pfizer, Inc.*, 356 F.3d 1326 (10th Cir. 2004), the Court affirmed the exclusion of an expert witness on a motion for summary judgment. It is not generally accepted methodology for an expert to rely "on pre-selected evidence from interested parties, to the exclusion of reliable evidence . . . ." *Id.* at 1331. Likewise, the Tenth Circuit has excluded experts who did not rely on valid sources or review their sources. *See Mitchell v.*

*Gencorp Inc.*, 165 F.3d 778 (10th Cir. 1999).  Exclusion is particularly necessary where evidence is "speculative and conclusory," or lacks proper background and support to "provide meaningful assistance to the jury."  *Cornwell v. Union Pac. R. Co.*, 453 F. App'x 829, 833 (10th Cir. 2012).

Eastin failed to review, investigate and consider all available evidence.  He relied on an incomplete "bucket" of materials from the DCIS investigator as supplemented only with materials from Boeing.  (*See,* Ex. B at 82:4-8 and 192:19-193:21.)  Though Plaintiffs made a PowerPoint presentation to the FAA, Eastin did not speak to any FAA personnel about it.  (*Id*. at 240:13-18.)  However, he did meet privately with Boeing's counsel and a Boeing engineer.  (*Id*. at 131:23-133:2; 133:8-23; and 134:3-5.)  Eastin only saw those specifications, details, requirements, or drawings that Boeing's counsel showed him.  (*Id*. at 87:18-24.)  He did no independent investigation or analysis.  (*Id*. at 52:9-18; 58:10-23; 59:6-13; 59:21-60:19, 97:13-19; 98:11-23; 108:15-110:2; 115:16-17; and 129:14-20.)  Eastin "didn't ask [Boeing's counsel] to feed [him] more information because that wasn't part of [his] task. [His] task was to look at this bucket and tell [them] what [he thought], and so that's what [he] did."  (*Id*. at 234:19-22; see also 236:10-14.)  Eastin never asked to look at data.  (*Id*. at 58:4-5 and 94:24-95:7.)  The only "data" provided was some dimensions and hole sizes from Boeing's PowerPoint.  (*Id*. at 95:17-22 and 97:2-17.)  Eastin found as significant the fact that DCIS did not provide any data or quantification of anything.  (*Id*. at 58:8-9 and 121:14-20.)

Although Eastin knew what key Boeing materials should be reviewed and considered, he never reviewed nor asked for them.  (*Id*. at 74:11-16; 75:12-15; and 76:1-7.)  He did not research FAA files.  (*Id*. at 41:19-42:5; 110:3-25; and 116:19-118:9.)  He never looked at the engineering drawings that are part of the certification data package.  (*Id*. at 81:11-15 and 81:17-82:20.)  He never looked at nor requested the parts drawings.  (*Id*. at 84:8-24.)  Though part number

8

nomenclature was included in a book for 737, Eastin did not use it. (*Id*. at 224:16-225:1.) Nor did he speak to his contacts at Boeing about the design of 737NG parts. (*Id*. at 80:7-10.)

Eastin neither met with nor contacted Plaintiffs, their counsel, or their experts before signing his declaration. (*Id*. at 100:24-101:1; 119:10-11; 119:15-17; and 126:24-127:6.) According to Eastin, meeting with Plaintiffs was beyond the scope of his task. (*Id*. at 243:2-13.) "My tasking was to look at the data I was provided, period." (*Id*. at 236:6-14.) Apparently, Eastin's tasking did not include asking Plaintiffs if they had relevant information.

Eastin testified that a note about discrepant parts gave him pause, but was pacified in finding no "squawks" about it in the material given him. (*Id*. at 126:20-127:1.) Eastin disregarded Boeing's own audit report as well as key deposition testimony from Ducommun's Robert Exley. (*Id*. at 220:4-18; 221:4-223:3; and 225:19-226:6; and Ex. 278, to be filed under seal as Ex. D.) Although the audit report was issued years after 737NG part production had begun, Eastin deemed its findings as "wrinkles" often seen at the start of a manufacturing program. (*See,* Ex B. at 226:22-228:14.) The audit report concluded, among other things, that:

- *Tools contractually represented to be required for a numerical control (NC) [computerized] machine* **process** were found being used as templates. Planning documents that were provided to the audit team indicated NC machine processing, NC machine-type tools, and NC programming tapes. *However, planning documents on the shop floor indicated otherwise*…. Observations at AHF-Ducommun revealed a labor-intensive hand-route/form process where machining-tools are used as shop aids and contour templates. *Insufficient processes, along with inadequate manufacturing and inspections, were found to exist at AHF-Ducommun and place the Company at risk* (p. 2)

- *Tool quality was poor* in that many tools were fabricated with *incorrect material*. The severity of these conditions is documented via photographs and *poses a quality risk to the production of quality airplane parts* (p. 3)

- *Two sets of planning documents were found to exist*. Planning provided to BCA-Wichita indicated numerical control (NC) manufacturing process. Planning used by AHF-Ducommun production personnel indicated a hand-route/form manufacturing process. *Observations, interviews, and process evaluation revealed* a labor-intensive

manufacturing process that includes hand-form using ball-peen hammers, scribing of the profile, and hand-sanding with a belt sander. If required, ATA holes are hand-drilled on a mill fixture (intended for NC machining). This manufacturing process was substantiated by AHF-Ducommun production personnel as *being the 'standard practice' for production of Boeing-Wichita parts*. The use of steel ball-peen hammers steel parts changes the molecular structure. AHF-Ducommun management contends that Boeing parts are NC machined. Contractual and financial agreements are based on NC machined production and not on manufacturing techniques AHF-Ducommun currently deploys. *Misrepresentation of the manufacturing process jeopardizes the integrity of airplane parts and incurs unnecessary financial impact* (pp. 5-6)

- *In 1996, AHF-Ducommun was given full delegation of product acceptance based, in part, on their numerically controlled (NC) manufacturing business process*. Initial production used the NC process to attain First Article Inspection. Once the First Article Inspection was obtained, it is believed AHF-Ducommun reverted to the current manufacturing process stated above. *The current manufacturing process does not meet the criteria for which the delegated authority was granted*.

- *Currently, AHF-Ducommun uses tools for the acceptance of parts. These tools were found to be out of calibration and inadequate to assure dimensional accuracy of production parts.* ATA holes are checked back to production tooling, which *is not in compliance with 800-10438*, 'Requirements For Product Acceptance To Statistical Tolerance' [Ex. H], a supplement that provides tolerances per BDS-1065 and defines the approved methods for determining if product meets the *statistical drawing requirements* (p. 6)

- AHF-Ducommun is a delegated source and has partnered with Boeing for many years. *Conditions identified during this audit should never exist with suppliers partnered with The Boeing Company* (p. 8)

- *As a result of the critical findings of this audit, and the civil penalties* proposed as a result of a recent *special audit performed by the Federal Aviation Administration* citing the Company with *inadequate supplier oversight* [Ex. I], this situation cannot be ignored. BCA-Wichita should not continue status quo with AHF-Ducommun. *The integrity of AHF-Ducommun as a partnered supplier places The Boeing Company at risk.* (p. 9)

- *Immediately cease all new business activity with AHF-Ducommun and consider disengagement*. A business case to continue an adversarial supplier relationship with AHF-Ducommun should be provided in the event that disengagement does not occur." (p. 10)

(*See*, Ex. D, all emphasis supplied.)  None of Boeing's own findings reached *before* litigation started mattered to Eastin.  He did not give a second thought to whether additional information, if requested, would evidence unsafe condition or FAA violations:

> [A]t the end of the day to -- what I was doing is I was mining for data [in what was provided] that would be evidence of unsafe condition that would be likely to occur on other aircraft, and basically, I didn't find any.  There was none *here*."

(*See*, Ex. B at 228:15-22.)  Though Eastin "was looking for quantification of condition and engineering evaluation of the parts," he found neither.  (*Id*. at 41:22-25.)  Instead Eastin opined based on *incomplete* information: "there was not enough information or there was not any data to make a determination that there was an unsafe condition."  (*Id*. at 42:1-3.)  Eastin operated under the mistaken presumption that the aircraft were continuously documented and certified during manufacture and so were airworthy.  (*Id*. at 48:23-49:11.)  Consistent with his deposition, Eastin's declaration should have stated that the materials provided to him were "devoid of quantifiable data" on which to base an opinion as to safety.  (*Id*. at 59:22-60:2.)

Because Eastin possessed only those limited facts provided to him, he could not competently and reliably opine on the safety issue involved here.

### D.     Eastin's Opinions Are Based On Insufficient Testing

Even the opinions of a qualified expert are inadmissible if they cannot be tested for accuracy.  *Norris*, 397 F.3d at 884; *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1213 (10th Cir. 2004) (excluding opinions where theories are untested and untestable, lack support in the evidence, and are based on assumptions and speculations).

Eastin's opinion of "no evidence of unsafe condition" cannot be tested.  As discussed, he had no acceptable methodology for gathering and reviewing the facts.  He only considered what

11

was shown to him. He made no independent inquiry. He asked no questions. He did not test his hypothesis. In short, Eastin was Boeing's rubber stamp.

Eastin's declaration and deposition are unreliable and should be excluded under FRE 702.

### III.   UNDER FRE 403, EASTIN'S DECLARATION AND DEPOSITION SHOULD BE EXCLUDED

Even where evidence is relevant, it should be excluded where its probative value is outweighed by the danger of unfair prejudice and jury confusion. FRE 403. For the reasons discussed, Eastin's opinions have no probative value. Moreover, the danger of unfair prejudice is great. Based on an analysis apparently spoon-fed to Eastin, Boeing seeks to create the false impression that FAA has rejected relators' position as to the safety problems with the aircraft. A Government pronouncement can carry great weight with jurors. Given the many problems with Eastin's opinions, the evidence should be excluded from consideration on summary judgment.

### CONCLUSION

WHEREFORE, the Plaintiffs ask this Court enter an Order striking the declaration and deposition of Robert Eastin as support for Defendants' motions for summary judgment.

Dated:  April 12, 2013

                                                Respectfully submitted,

                                                s/ Corlin J. Pratt
                                                Corlin J. Pratt, Bar No. 12213
                                                Terry L. Unruh, Bar No. 10084
                                                SHERWOOD, HARPER, DAKAN,
                                                 UNRUH & PRATT, LC
                                                833 N. Waco
                                                P.O. Box 830
                                                Wichita, KS 67201-0830
                                                Telephone:  316-267-1281
                                                Fax:  316-267-4086
                                                E-Mail:  corlin.pratt@sherwoodharper.com

        E-Mail:  terry.unruh@sherwoodharper.com

        - and -

William J. Skepnek, Bar No. 10149
THE SKEPNEK LAW FIRM, P.A.
1 Westwood Road
Lawrence, KS 66044
Telephone: 785.856.3100
Fax: 785.856.3099
E-Mail:  bskepnek@skepneklaw.com

        - and -

James M. Hoey, Illinois Bar No. 1233505
Michael R. Grimm, Illinois Bar No. 01062220
Dean S. Rauchwerger, Illinois Bar No. 618973
Don R. Sampen (Illinois Bar No. 2448351)
CLAUSEN MILLER PC
10 South LaSalle Street
Chicago, Illinois 60603-1098
Telephone: 312-855-1010
Fax:  312-606-7777
E-Mail:  jhoey@clausen.com
E-Mail:  mgrimm@clausen.com
E-Mail:  drauchwerger@clausen.com
E-Mail:  dsampen@clausen.com
*Attorneys for Plaintiffs and Relators*

# CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2013, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

| | |
|---|---|
| Jeffery A. Jordan | jjordan@foulston.com |
| James M. Armstrong | jarmstrong@foulston.com |
| Boyd A. Byers | bbyers@foulston.com |
| Steve Y. Koh | skoh@perkinscoie.com |
| Paul Graves | pgraves@perkinscoie.com |
| Thomas J. McLaughlin | TMcLaughlin@perkinscoie.com |
| Ron L. Campbell | rcampbell@fleeson.com |
| Stephen E. Robison | srobison@fleeson.com |
| Lyndon W. Vix | lvix@fleeson.com |
| Jon P. Fleenor | jon.fleenor@usdoj.gov |

and by placing a true and correct copy in the United States mail, postage prepaid, properly addressed to the following:

Alicia J. Bentley
Senior Trial Counsel
United States Department of Justice
Frauds Section, Civil Division
601 D Street N.W., Room 9126
Washington , D.C.   20004


s/ Corlin J. Pratt
Corlin J. Pratt, Bar No. 12213